Black v. Purnell.

---

## THOMAS BLACK

*v.*

## PETER PURNELL.

The testimony of a husband and wife that the latter, who was unable to read or write, affixed her mark to a mortgage of land, the title to which was in her name, in ignorance of its contents, and that the wife was not privately examined, is insufficient to entitle her to have it canceled, where she practically admits its execution by her husband, and it appears that the certificate of acknowledgment conforms to the statutory requirements, the commissioner testifies that it is his uniform custom, and to the best of his recollection he did in this case explain the contents and strictly complied with the law, and other circumstances indicate that the defendant's recollection of the transaction may be defective.

On final hearing on bill, answer, cross-bill, answer, replication and proofs in open court.

*Mr. George F. Fort,* for the complainant.

*Mr. Henry S. Scovel,* for the defendant.

GREEN, V. C.

This is a bill to foreclose a mortgage, made by the defendants Peter Purnell and Margaret, his wife, to the complainant Thomas Black, dated October 29th, 1890, to secure a bond of even date therewith, made by Peter Purnell to the complainant, conditioned for the payment of $208 in six months, with interest. The complainant acknowledges that six months' interest has been paid. Decree *pro confesso* was entered against the defendants, which was opened as to the defendant Margaret Purnell, who thereupon filed her answer. In this she admits that it may be true, as stated in the bill, that on October 29th, 1890, the said Peter Purnell executed and delivered to complainant a certain bond and mortgage to secure the sum of $208 on the premises in said bill mentioned, but denies that the said Peter Purnell ever received said sum of $208, or any part thereof. She admits having affixed her mark to a paper in presence of Joseph W. Fox, which he requested her to sign, but she says she was ignorant of the true nature, tenor or purport of the instrument; that she is not able to read or write or to inform herself by an inspection and reading the same of its effect; that it was not read or explained to her by Mr. Fox, and that she affixed her mark in ignorance of the true character of the writing and without knowing that she thereby mortgaged her property. She denies that she acknowledged it in due form of law. She denies that the money remains due thereon, and avers that she had no intention to mortgage her property, and, if she had known the character of the writing, she would have refused to sign it; that Mr. Fox and complainant took advantage of her lack of education and ignorance and induced her by false statements and representations to sign and deliver the mortgage, and denies that she ever received

Black *v.* Purnell.

:any money thereon or any part thereof, or that she derived any benefit or advantage therefrom, and avers that it was wholly ·without consideration and was void and of no effect.

And by way of cross-bill she asks that the mortgage may be ·decreed to be void and delivered up to her for cancellation.

To this answer and cross-bill there was a replication and answer ifiled by the complainant.

It appears by the evidence that there had been some dealings in the purchase of horses between the complainant and the defendant Peter Purnell and a son of the defendants, and that there were two notes passed between the parties, one of which it was ·claimed the defendant Margaret Purnell had signed. The indebtedness had run along until the complainant desired a settlement, and, as he testifies, told the defendants that he could not ·extend their time of payment on personal security, but that if they would put it in the shape of a mortgage he would give them :a year. The defendant Margaret Purnell admits that complainant told her that if she would make a payment of $1 a month he would not crowd them and would give them a year to pay. Peter ·admits that complainant said he would give them a year if they would pay him $1 a month.

Complainant left his notes with Joseph W. Fox, who was a justice of the peace and a commissioner of deeds. The defend-·ants knew that Mr. Fox had this claim in his hands for the purpose of either collecting it or having it secured. Margaret ·says she went to see Mr. Fox about the note and that he also told her that complainant would not crowd them, but would give them six months.

Both of them testified that they were asked to take the deed ·of the property, which was in the wife's name, to Mr. Fox's ·office. They say that Fox took the deed and was busy writing with it before him, but that they did not know he was drawing a mortgage, and that they signed these papers at his solicitation, but that he neither read the same over to them or explained the contents, and that they were entirely ignorant of the effect that by so doing they were placing a mortgage upon Margaret's prop-·erty.

Black *v.* Purnell.

On the other hand, Mr. Fox, who is a conveyancer as well as justice of the peace, states that it is his uniform custom either to read over such a paper or to fully explain its tenor and effect, and that on this occasion, to the best of his recollection and belief, he did so explain this instrument to them both.

Both of the defendants say that at no time did the husband leave the room, and that no acknowledgment of the wife separate and apart from her husband as required by law was taken.

On the other hand, Mr. Fox declares explicitly that he explained the contents of the mortgage to the defendants and that Peter stepped out of the room, and that she made the acknowledgment in the form required, and that he so certified.

We thus have conflicting testimony upon this vital point, and it is necessary, in deciding the case, to determine which has given the true statement of the transaction. The burden of proof is on the defendants. Numerically they are two witnesses against one, there being only the testimony of Mr. Fox against them; but this is not controlling. We have in the first place the presumption of law that a public officer has properly discharged his duty. His duties in this regard are judicial. *Homœopathic Mutual Life Ins. Co.* v. *Marshall, 5 Stew. Eq. 103.* The certificate is *prima facie* evidence of the facts it recites. *Marsh* v. *Mitchell, 11 C. E. Gr. 497,* affirming *12 C. E. Gr. 631.*

In the next place, Mr. Fox is, so far as it appears, entirely disinterested, and, on the other hand, the defendants are interested to relieve this little property from the burthen of the mortgage.

I say, with regret, that I was impressed from Peter Purnell's manner upon the stand that he had no proper appreciation of the obligation of an oath ; nor do I think from all the testimony that it was reasonable to believe that this mortgage was executed by these parties without their understanding what they were doing. They admit that the complainant held a claim against them, and that there had been some talk with reference to securing its payment. They knew that this claim was in the hands of Mr. Fox, a justice of the peace, for settlement or adjustment. They went to see him in reference to that matter. They must have known that his request to have the deed of the property had reference to

the settlement of this claim, and I cannot account for their actions with reference to the transaction on any other theory than a knowledge that they were required to give some security affecting this property for the payment of the debt.

They saw him drawing a paper with the deed before him. Their remark indicates they supposed he was using it when preparing such paper. They both admit they made their marks to it at Fox's request. They do not say what they thought they were signing, only that he did not tell them it was a mortgage. She practically admits in her answer that Peter Purnell executed a bond and mortgage. In the answer she charges deception, but she does not say in her testimony that Fox made any false statement, only that she made her mark at his request. I cannot believe they executed this paper without some statement from Mr. Fox as to its purpose.

While both of the defendants state that they were unable to read or write, there was nothing transpired on their examination to indicate dense ignorance on the part of either one of them, but, on the other hand, they gave every evidence of shrewdness and intelligence. I think the evidence establishes that defendants were informed that this paper was a mortgage to secure the debt. This view is strengthened by the fact that the notes which Mr. Fox had in his hands were delivered to the defendants on their giving this mortgage. It is true the evidence is not explicit upon this point, but such seems to be the weight of the testimony and which is partially established by the fact that they now have possession of one of the notes and which was produced in evidence and marked *Exhibit D 1* in behalf of the defendants.

I do not think much force is to be given to the fact that the defendant Margaret paid six months' interest, as such act might be referable to an agreement on their part to pay $1 a month for the forbearance of the debt, and besides this she says that she got $5 of the money thus paid from her son, who seems to have been the largest original debtor.

The case is not without difficulty, but I think that the importance of maintaining the investment of moneys by instruments solemnly entered into requires that they should not be set aside,

except on the clearest evidence of their invalidity (*Oppenheimer v. Wright, 106 Pa. St. 569*), and therefore shall advise a decree for the complainant for the amount of principal and interest, less the six months' interest, which it is admitted has been paid.