ANNA M. BENNETT, Plaintiff, v. CAROLINE EDGAR, De-fendant.

(County Court, Kings County, January, 1905.)

Mortgage — Foreclosure without production of bond — Defense of forgery — When plaintiff entitled to judgment.

> Where a mortgage upon real estate contains an acknowledgment of an indebtedness, a covenant to pay and authorizes foreclosure should default be made in payment of principal or interest, and there is no proof other than the recitals therein that a bond was ever given, an action to foreclose the lien is maintainable without the production of the bond.*
>
> Where, in an action to foreclose a mortgage upon real estate, the issue being as to the genuineness of the mortgage, the evi-dence resolves itself into a mortgage apparently duly executed and acknowledged by defendant upon the one hand, and the denial of its execution by defendant on the other hand, and a conflict between experts as to handwriting which looked alike in all ex-

---

. * See Thomas Mortg. (2nd ed.) §§ 355, 813; Bergen v. Urbahn, 83 N. Y. 49.

# 232 BENNETT v. EDGAR.

hibits of genuine signatures of the defendant, introduced as standards for comparison with the alleged forged signature to the mortgage, and the evidence introduced by defendant is not so clear and convincing as to amount to a moral certainty that she did not sign and execute the mortgage, and it appears that plaintiff, who had invested her money in said mortgage through an attorney and counselor-at-law, never had any transactions with defendant and never saw or spoke to her till after default in the payment of interest, judgment should be given for plaintiff.

ACTION to foreclose a mortgage.

Hubbard & Rushmore (George C. Case, of counsel), for plaintiff.

George V. Brower, for defendant.

CRANE, J. This action is brought to foreclose a mortgage alleged to have been made by the defendant to the plaintiff, bearing date the 20th of March, 1900, to secure the payment of the sum of $2,500, and covering property in the twenty-ninth ward of the borough of Brooklyn, formerly the town of Flatbush, in the county of Kings.

The defendant denies each and every allegation of the complaint and claims that her signature to the mortgage is a forgery.

Upon the trial the plaintiff offered in evidence the mortgage, apparently duly executed by the defendant, and rested her case, and the first point to consider is whether this action can be maintained upon the mortgage without the production of the bond.

Upon its face the mortgage appears to be regular and to have been duly executed and acknowledged by the defendant on the 20th day of March, 1900, and to have been recorded on the 14th day of April, 1900, and by its recitals acknowledges and admits that the mortgagor is indebted to the mortgagee in the sum of $2,500, to be paid on or before the 1st day of May, 1903, and the mortgagor therein covenants to pay the same. From the testimony it appears that Mrs. Bennett, in 1900, gave to A. W. S. Proctor, an attorney

and counselor-at-law in this county, $2,500 to invest, and received back the mortgage in question upon which she received interest through Proctor for three years following. The bond, she testifies, was never given to her, and outside the recitals in the mortgage there is no evidence that there ever was a bond. Mrs. Bennett had been doing business with Proctor for some years prior to 1900, and claims that he was accustomed to keep her bonds so as to credit thereon the interest when paid.

I believe the law to be that upon the foregoing facts the plaintiff may maintain this action to foreclose her lien upon the real property covered by the mortgage.

Jones on Mortgages (§ 72) says that it is not necessary that there should be any collateral or personal security, such as a note or bond. If the mortgage contains a recital of an indebtedness that is sufficient to maintain the action to foreclose the lien.

In Munoz v. Wilson, 111 N. Y. 295, Chief Justice Ruger says: " It is only, we think, when a bond is shown to have accompanied a mortgage, and contains *the only apparent evidence* of *the debt* to which the mortgage is collateral, that it must be produced, or its non-production accounted for on the trial. * * *. The reason of the rule wholly fails when there has never been a bond, *or when the existence of and liability for* the debt *secured is proved, by the admissions and covenants contained in the mortgage.* * * *. The mortgage also contains an express covenant to pay to the mortgagee, her executors, administrators or assigns, ' the said sum of money and interest as mentioned above, and expressed in the condition of the said bond.' The mortgage further authorized its foreclosure if default shall be made ' in the payment of said sum of money above mentioned or the interest that may grow due thereon.' Each one of these latter clauses refers as well to the sum admitted therein to be owing by the mortgagor to Mrs. Clay as to the sum also stated to be expressed in the bond, and renders the reference to the bond unnecessary and superfluous."

In this case the mortgage contains an acknowledgment of indebtedness, a covenant to pay, and there is no proof other

County Court, Kings County, January, 1905.        [Vol. 46.

than its recitals that a bond was ever given, while the substance of the defendant's testimony is that no bond was ever executed as she denies the entire indebtedness.

The next question for me to determine, therefore, is whether the plaintiff has proved her case by the weight of the evidence introduced in her behalf or whether on the issue of the genuineness of the mortgage the evidence fails to preponderate in her favor.

As above stated the substance of the testimony given to support the allegations in the complaint is that for some years prior to 1900 the plaintiff had transacted business with Mr. Proctor, and in that year gave him $2,500 to loan on bond and mortgage, and thereafter received from him the mortgage in question on which interest was paid by or through Proctor up to May, 1904. The mortgage was offered in evidence and is signed with the name "Caroline Edgar," apparently in the presence of Albert W. S. Proctor, and contains the usual acknowledgment clause, stating that on the 20th day of March, 1900, before Albert W. S. Proctor, notary public of Kings county, New York, Caroline Edgar, known to him to be the individual described in the mortgage and who executed the same, acknowledged to him that she executed it. An internal revenue stamp, required by the law in force at that time is also annexed, and by the certificate of the register of Kings county the mortgage was recorded in liber 26, page 202, of mortgages, on April 14, 1900.

The plaintiff never had any transactions with the defendant; never saw or spoke with her till after default in the payment of interest in May, 1904, when she and her husband called upon Miss Edgar and had the following conversation, as plaintiff testifies: "I told her we had a mortgage on her place and she didn't say very much at first, but she said she didn't know how many mortgages she had on her place."

The defense interposed to the action, as before stated, is one of forgery, the defendant testifying that she never signed or executed the mortgage in question, and that the name "Caroline Edgar" appearing on the instrument is not her signature and was not signed by her. It also appears by her testimony that she transacted business with Mr. Proctor;

that he had settled her mother's estate and that he also looked after some of her own personal matters covering a period of years prior to 1900. She testified that she never had any mortgages in her name, but later admitted that in this she was mistaken, as she had assigned a mortgage of $800 at the instance of Proctor. When questioned regarding the assignment of a $1,600 mortgage made by Sarah Druse and Morris Druse to her, the defendant testified that she assigned it to a Mr. Linnington in Proctor's office, and when shown the paper purporting to be such assignment, dated January 2, 1900, she stated that the signature " Caroline Edgar " looked like her writing, but later denied that it was her signature and claimed that the only assignment of a mortgage which she made was the one of $800 in amount. She also consented to act for Mr. Proctor as a dummy in reference to property on Waverly avenue in Brooklyn, testifying as follows: " Mr. Proctor asked me if I would do him a favor and if he could buy this property in my name, he didn't care to buy it in his wife's name because she would not sign off for him and I did it as a favor." And again she testifies: " Q. You had perfect confidence in him (meaning Mr. Proctor) ? A. Yes, sir. Q. That extended over that whole period of time ? A. Yes, sir. Q. If he asked you to sign a paper you would sign it with perfect confidence ? A. Yes, sir. Q. And leave it with him ? A. Yes, sir. Q. For the purpose of carrying out whatever he wanted ? A. Yes, sir."

It is quite apparent to my mind that the defendant is somewhat confused and uncertain as to the exact transactions which she had with or through Proctor and that her recollection is not entirely clear as to the papers she signed at his request.

A number of genuine signatures of the defendant were introduced in evidence as standards for comparison with the alleged forged signature to the mortgage, and on a careful examination of these, while they may vary more or less in the formation of certain letters or in the freedom with which they were apparently written, the general characteristics are such that I cannot say or form the conclusion that the same

hand did not write all the signatures; in other words, there is not such a marked difference but that, as the defendant herself says, the signature to the mortgage looks very much like the other signatures of the defendant, concededly genuine.

The defendant's niece, who claims to be familiar with her aunt's handwriting, says that in her opinion the signature to the mortgage was not made by the defendant, and the handwriting experts, Southworth and Wasson, also testify to the effect that in their opinion the person who wrote the name " Caroline Edgar " to the mortgage did not write the same name in the standards, while the expert Benthuysen is not positive about it, stating in answer to the question: " Q. Could the same hand that wrote that on the disputed paper write these other exhibits, 2, 3 and 4; could the same hand or did the same hand? A. I think the same hand might, allowing for a period of years to elapse as a difference."

These experts are answered by other experts called for the plaintiff, McDonald and Wurzler, who having compared the signature to the mortgage with the genuine signature to the answer in the case, stated as their opinion that both were written by the same person.

The evidence resolves itself into a mortgage apparently duly executed and acknowledged by the defendant upon the one hand and the denial of its execution by the defendant on the other, and a conflict between experts as to handwriting which looks alike in all the exhibits. Which side produces the weightier testimony?

The Court of Appeals has laid down a rule for the guidance of trial courts in cases similar to this. In Albany County Savings Bank v. McCarty, 149 N. Y. 71–80, it is stated: " The rule governing the action of trial courts, as well as appellate courts, with power to review the facts, seems to be uniform in all the states to the extent of requiring that a certificate of acknowledgment should not be overthrown upon evidence of a doubtful character, such as the unsupported testimony of interested witnesses, nor upon a bare preponderance of evidence, *but only on proof so clear and convincing as to amount to a moral certainty.* * * *.

We think that, as between the parties, a certificate of acknowledgment, when read in evidence, makes out a *prima facie* case as strong as if the facts certified had been duly sworn to in open court by a witness, apparently disinterested and worthy of belief. The legal presumption of the proper performance of official duty by a public officer requires that this effect should be given it."

Adopting, therefore, this rule for my guidance in this case I do not find that the evidence introduced by the defendant is so clear and convincing as to amount to a moral certainty that she did not sign and execute the mortgage.

Proctor was not called by either party, the evidence being that he cannot be found, but it was not controverted that at the date he took the acknowledgment he was a notary public in the county of Kings.

For the above reasons I must give judgment for the plaintiff.

*Judgment for plaintiff.*

---

John H. Durack, as Trustee in Bankruptcy, Etc., Plaintiff, *v.* Hattie P. Wilson et al., Defendants.

(Supreme Court, Nassau Special Term, January, 1905.)

**Bankruptcy — Action by trustee to set aside fraudulent transfers.**

Where the bankrupt defendant several years prior to her adjudication as a bankrupt on justifying a surety upon an undertaking given on appeal from a judgment against a corporation, of which her husband was president, made oath that she was a freeholder owning an undivided one-half interest in certain unincumbered real estate worth $10,000, and less than a month after the affirmance of the judgment appealed from conveys her interest in the property by a deed absolute on its face to her sister for $2,500, after mortgaging it for $2,500, loaned, as the mortgagee testified to the mortgagor's husband who was not called as a witness and within a month of the entry of judgment against her on the undertaking, files a petition in bankruptcy, her schedules stating an in-