JENNIE PICETTI, APPELLANT, *v.* JOE M. ORCIO AND MARIE ORCIO, HIS WIFE, ANGELO ORCIO, PEDULLA GIORGIO, JOE DOE AND RICHARD ROE, RESPONDENTS.

No. 3096

June 30, 1936.                               58 P.(2d) 1046.

*J. M. Frame* and *W. M. Kearney,* for Appellant:

*L. D. Summerfield,* for Respondents:

## OPINION

By the Court, COLEMAN, J.:

This is a suit to recover judgment upon a promissory note purporting to have been executed by defendants Joe M. Orcio and his wife, and to foreclose a mortgage alleged to have been executed by them to secure the payment of said note. The court entered a personal judgment only against Joe M. Orcio, and a judgment in favor of the other defendants.

Plaintiff has appealed from so much of the judgment as was adverse to her, and from the order denying a motion for a new trial.

In July 1919, the defendant Joe M. Orcio, Marie Orcio, his wife, Angelo Orcio, and Pedulla Giorgio purchased the ranch in question. The Doe family do not appear to have any interest in the ranch. It appears from the undisputed testimony of the defendants that each of them paid one-fourth of the purchase price of the ranch and they were named as grantees in the deed of conveyance.

It is the theory of the plaintiff that the defendants Joe Orcio and Marie Orcio, his wife, executed the note and mortgage in question, and that though the other two owners in the ranch did not sign the note and mortgage, the four constituted a partnership in the ownership and operation of the ranch, and that Joe Orcio had the authority to bind the four by the execution of the note and mortgage. It is the contention of

each of the defendants that they are tenants in common and own an undivided one-quarter share in the ranch, and that the ranch constitutes a homestead in fact.

It appears that Joe Orcio and his wife borrowed $500 from the Washoe County Bank, in December 1919, and later (in 1920), a thousand dollars, both of which loans were secured by their joint mortgage upon the ranch; that thereafter (in 1921) Joe Orcio borrowed $2,500 from Philip Curti, and that a note therefor, and a mortgage securing the same, purporting to be executed by Joe M. Orcio and Marie Orcio, his wife, were delivered to him; that in 1928, Curti desiring to obtain the money on said last-mentioned note and mortgage, and Orcio being unable to pay it, negotiated a sale of the same to this plaintiff, who being desirous of a new note and mortgage, the one in question here was drawn, and admittedly executed by Joe Orcio, but denied by Marie Orcio. It is conceded that the other two defendants did not sign either the note or mortgage.

The first contention we will dispose of is whether the defendants were partners in the purchase and operation of the ranch, and whether Joe Orcio was the managing partner and had full power to bind the other defendants in the execution of the note and mortgage.

In support of the rule of law relied upon, counsel cite Adams v. Blumenshine, 27 N. M. 643, 204 P. 66, 67, 20 A. L. R. 369; Whitney v. Dewey, 158 F. 385, 86 C. C. A. 21; Sumner v. Hampson, 8 Ohio 328, 32 Am. Dec. 722.

In the first-named case the court says: "The presumption is always against the inclusion in the firm assets of real estate held by the partners as tenants in common. * * * The mere use of the property for firm business is only a slight circumstance tending to show that the premises were intended to be partnership property."

The other two cases just mentioned are of no aid to us in deciding the question involved.

We think that the correct rule to be applied in a

situation such as confronts us is stated in 20 R. C. L. p. 854, sec. 61, as follows: "There is some uncertainty as to what must be shown in order that real property may be considered a portion of the firm assets. The rule which has the support of the best authority, and which rests on sound principle, is the one which makes the intention of the parties at the time of taking the conveyance the proper test. In other words, the question is one to be determined from the intention of the parties, or as it is sometimes said, from the agreement of the parties. In all cases the presumption is against the inclusion of the real estate, and in order that it may be treated as belonging to the partnership the intention must be clearly manifested. There is also a presumption that the ownership of real estate is where the muniment of title places it. If by all the circumstances attending the transaction, it is made to appear that, in the intention of the parties, it was purchased for and was treated as partnership property, the presumption of ownership arising from the face of the deed will be overcome, and the property will be treated as belonging to the partnership."

In an early case arising in Virginia, where two men bought a tract of land with a mill situated upon it, which (mill) was operated as a partnership, the court said: "I consider Wheatley and Calhoun as joint owners of the realty, and partners only in the milling business carried on upon the property. There may, indeed, be partnerships in the business of milling, or mining, or farming; but unless the intent of the joint owners to throw their real estate into the fund as partnership stock is distinctly manifested, or unless the real property is bought out of the social funds, for partnership purposes, it must still retain its character of realty. Considering the partnership as a third person, the titles of the individual partners cannot be passed to it, perhaps, without violating the statute of frauds, unless it be by express agreement in writing, or unless, by purchasing with partnership funds, an implied trust is

raised in its favor. In this case, I see nothing from whence to infer that there was any design on the part of these joint purchasers to convert their real estate into partnership stock; nor am I better satisfied, that the property was purchased with, or paid for out of, partnership funds. To raise a trust by such purchase it must have been made at the time with partnership funds or on partnership responsibility. The payment, incidentally, out of those funds of an installment due upon an antecedent contract on individual responsibility cannot raise such a trust, or give title to anything but reimbursement." Wheatley's Heirs v. Calhoun, 12 Leigh, 264, 273, 37 Am. Dec. 654.

In Parsons on Partnership (4th ed.), at section 265, it is said: "Real estate purchased for partnership purposes, and appropriated to those purposes, paid for by partnership funds, and necessary to partnership purposes, always becomes partnership property."

The same author, at section 266, says: "We consider that the three elements we have above stated must unite in order to make the real estate necessarily partnership property."

Counsel quotes from the case of Hogle v. Lowe, 12 Nev. 286, as follows: "When property is purchased with partnership funds for partnership purposes, and appropriated to partnership uses, no further proofs should be, and certainly none are, required in order to establish the evident intention and agreement of the partners. In such case, every act impresses upon the property the character of personalty."

Even this quotation contemplates a purchase with partnership funds, which was not the fact in the instant case. And counsel failed to quote the following language in the same paragraph: "But the mere fact that real property held by members of the firm as tenants in common is used by the partners in the partnership business for partnership purposes, or an agreement to so use it, is not of itself sufficient to convert it into partnership stock; there must be some evidence of further

agreement to make it partnership property. (Vol. 1, Am. Lead Cas. 496). At law, real property used by a partnership is deemed to belong to the person in whose name the title by conveyance stands; and it is so considered in equity, until it is shown to be partnership property, either by evidence establishing a proper agreement, or by proof of purchase with partnership funds for partnership purposes."

It is said in 47 C. J. 677: "While, in accordance with general rules, an agreement beween joint owners of property to carry on a common trade or business and to share the profits and losses thereof will constitute a partnership, a mere community of interest, such as exists between tenants in common or joint tenants of real or personal property, does not make such owners partners or raise a presumption that a partnership exists, and this is so, even though they cooperate in making improvements in their property and in realizing and sharing the profits or the losses and expenses arising therefrom."

Without reviewing the evidence at length, we may say that all four of the defendants testified that each paid out of his own private funds one-fourth of the purchase price of the ranch. The wife testified that she earned the money she paid, partly before her marriage, as a trained nurse. Each of the witnesses testified that the individual purchasers acquired an undivided one-fourth interest in the property, and that they purchased the ranch for ranching purposes, each to receive one-fourth of the profits and to share equally the losses, if any. While the testimony of the defendant Joe Orcio, as to certain funds which went into improvements, and as to other phases of the case, is very unsatisfactory, we cannot say that it clearly appears that the finding of the trial court on this phase of the case was erroneous, and such finding must stand.

Counsel for appellant call to our attention several authorities which expressly recite the fact of an express agreement between the partners, at the time the real

estate is appropriated to the use of the firm, to the effect that it shall become a partnership asset. They are not in point, since there was no such agreement in this case.

Counsel do not refer to the case of Arnold v. Stevenson, 2 Nev. 234, where it was held that one partner has no authority to mortgage the real estate of the firm, and we do not find it necessary to determine the correctness of that holding.

■ The next question is whether or not Mrs. Orcio signed and acknowledged the mortgage in question, so as to charge the homestead interest of herself and husband with the debt. She testified that she did not sign it, and her husband testified that he signed her name to the deed, at the time he signed his name to it. To justify this court in reversing a judgment of the trial court on a question of fact, it must clearly appear that the trial court reached the wrong conclusion. Can we say in this case that the trial court did reach a wrong conclusion on the point in question?

We are satisfied that the trial court did not give due consideration to the weight which should be given to the certificate of the notary public, who certified to Mrs. Orcio's signature. We say this for the reason that the law on the point was not called to our attention, either in the briefs or the oral argument, which is very strong reason to believe that it was not suggested to the lower court.

Mrs. Orcio admitted signing two previous mortgages given on the ranch, one executed in 1919 and the other in 1920, the latter just a year before the mortgage to Curti was given, of which the one in question is in reality a renewal. She testified that the notary who certified to her signature to the Curti mortgage and to the one in question at no time sought to take her acknowledgment. The notary, who is an attorney and who prepared the two mortgages, pursuant to instructions, and who was in no way blamable for failure to include the other two owners as mortgagors, testified that at the

time the husband signed the mortgage he told him that it would be necessary that his wife sign it also. He testified that the husband said it was impossible for her to come in at the time, to sign; and that, after waiting a few days, he drove out to the ranch, exhibited the note and mortgage to the wife, told her what they were, and that she must sign them; that she took them in the house and brought them back with her signature attached, handed them to him, saying she knew all about them, whereupon he certified to her signature in due form. Mr. Curti testified that he was in the attorney's office at the time that the husband signed the mortgage, and that he did not sign his wife's name thereto, as he testified.

■ What is the law pertaining to the impeachment of a certificate of acknowledgment of a notary public? The rule stated at section 267 of John's American Notaries (4th ed.) is as follows: "Certificates of acknowledgment may usually be impeached only for fraud, conspiracy, collusion or imposition, and clear, convincing and satisfactory proof is required."

In 46 C. J. at page 519, it is said, relative to impeaching a notary's certificate: "It may be contradicted or impeached by other competent evidence, but clear and convincing proof by disinterested witnesses is required."

1 R. C. L. p. 297, sec. 88, states the rule as follows: "The decisions disclose a very decided tendency on the part of the courts to attach weight to certificates of acknowledgment and to view attempts to discredit them with suspicion and distrust. It frequently has been stated as a rule that in order to impeach a certificate the evidence must be clear, cogent and convincing beyond reasonable controversy."

The supreme court of the United States, in Young v. Duvall 109 U. S. 573, 576, 3 S. Ct. 414, 416, 27 L. Ed. 1036, in considering the weight to be attached to the certificate of a notary public, said: "Of necessity, arising out of considerations of public policy, his certificate must, under circumstances disclosed in this case, be

regarded as an ascertainment, in the mode prescribed by law, of the facts essential to his authority to make it; and if, under such circumstances, it can be contradicted, to the injury of those who in good faith have acted upon it,—upon which question we express no opinion,—the proof to that end must be of such a character as will clearly and fully show the certificate to be false or fraudulent. Northwestern Mut. L. Ins. Co. v. Nelson, 103 U. S. 544, 547 [26 L. Ed. 436]. The mischiefs that would ensue from a different rule could not well be overstated. The cases of hardship upon married women that might occur under the operation of such a rule are of less consequence than the general insecurity in the titles to real estate which would inevitably follow from one less rigorous."

The supreme court of Alabama, in Miller v. Marx, 55 Ala. 322, in disposing of this question, referred to and quoted from one or two cases sustaining the rule above stated. In that case the court said: "The question we are discussing is not new in the courts of justice. When families are about to lose the protection of the roof-tree, and to be turned homeless upon the world, it is but human that they should resort to every means within their power to avert so dire a calamity. Interest is no longer a disqualification to testify, under the statutes of this state. Impelled by keen apprehension of want, it is not surprising that parties to the suit, when on the witness stand, should testify under undue bias, no matter how honest their intentions to tell only the truth may be. Wives rarely join in a conveyance or incumbrance of a homestead, without a suppressed misgiving or reluctance. When in after years—perhaps after the death of the husband—such conveyances are about to be enforced, and the family dispossessed, how easy to prove by the wife herself, and perhaps by the children who have all the while been around her, that her signature was not voluntary, and that she did not assent to the conveyance. If such testimony can prevail to set aside solemn conveyances, acknowledged or proved, and

certified according to the forms of law, what confidence can the public repose in land titles? It is much less hurtful that cases of individual hardship should be endured, than that, on testimony always open to distrust, the repose of society should be disturbed by so fearful discredit cast on the titles to real estate."

The supreme court of Washington, in Western L. & S. Co. v. Waisman, 32 Wash. 644, 73 P. 703, 704, in dealing with this question, said: "That the evidence required to overcome a certificate of acknowledgment must be clear and convincing is generally held, and it may well be said that where fraud or duress is not shown as a circumstance attending an acknowledgment, the unsupported testimony of parties directly interested in the impeachment is not of that clear and convincing character that is necessary to overcome a record and an official act."

In a note to Ford v. Ford, 7 Ann. Cas. 245, a long list of cases is cited in support of the rule that to impeach a certificate of a notary public to an acknowledgment the evidence must be clear, cogent, and convincing beyond reasonable controversy; and in the same note many cases are cited to sustain the proposition that the testimony of interested witnesses is insufficient to overcome the force of the certificate of acknowledgment. As to this latter proposition we do not find it necessary to express an opinion. See 1 Devlin on Deeds, sec. 529.

Let us determine if the evidence in behalf of defendants Joe Orcio and wife to the effect that she did not sign and acknowledge the mortgage is so clear, cogent, and convincing as to overcome the certificate of acknowledgment and adverse evidence. We do not think it is. The defendants were vitally interested in defeating the foreclosure on their homestead, whereas the notary had no real interest in the outcome. When the husband signed the mortgage, he was told by the notary that his wife had to sign it, which showed that he knew the necessity of her signature. He is an attorney who stands unimpeached. Is it likely that, knowing

the necessity of the wife's signature, he would certify to her having signed if he had known that she had not? The testimony of her husband is contradicted by Philip Curti, who may be a biased witness, but is not shown to be interested in the result. Furthermore, the testimony of the husband as to use of the $2,500 obtained from Curti in 1921 seems incredible. A few months after the ranch was purchased he gave a mortgage to the bank for $500, which indicates that he had no available funds at that time; and some months later he borrowed $1,000 from the bank, both loans having been secured by a mortgage in which his wife joined; yet a year or two later he testified to spending several thousand dollars for chickens and chicken feed, and accounted for the acquiring of such funds through earnings of $150 per month. His whole testimony, when closely analyzed, would indicate that it is entitled to little or no credit.

■■ There is nothing in the wife's testimony which throws suspicion upon it, save her interest and the improbability that a notary, knowing the law and its consequences, would be likely to falsely certify to her acknowledgment. It is true that if we accept the notary's testimony we must say that she did not, strictly speaking, acknowledge that she signed the mortgage. But, from his testimony, she handed him the document with her signature thereto, and stated she knew all about it. This, we think, was enough to bind her. It is the well-recognized rule that where one adopts the signature and seal of another, purporting to be his, he is bound thereby. Chivington v. Colorado Springs Co., 9 Colo. 597, 14 P. 212; Clegg v. Eustace, 40 Idaho 651, 237 P. 438; Jansen v. McCahill, 22 Cal. 563, 83 Am. Dec. 84.

It is ordered that the judgment and order in favor of Joe M. Orcio and Marie Orcio, his wife, be and is hereby reversed, and the trial court is directed to enter a judgment in plaintiff's favor against them, and to decree a foreclosure of the mortgage as to their interest in the

ranch. Judgment and order affirmed as to other defendants. Plaintiff to recover costs against Joe Orcio and wife.

ON PETITION FOR REHEARING

November 5, 1936.

*Per Curiam*:

Rehearing granted.

ON REHEARING

April 30, 1937.                                    67 P.(2d) 315.

*L. D. Summerfield,* for Respondents:

*J. M. Frame* and *W. M. Kearney,* for Appellant:

## OPINION

By the Court, COLEMAN, C. J.:

We granted a rehearing in this case that we might further consider the correctness of our conclusion as to the weight which should be attached to the certificate of acknowledgment as to Mrs. Orcio. We will not restate the facts of the case.

It is insisted that the testimony of Mrs. Orcio, standing alone, if believed by the trial court, is sufficient to justify the decree entered, and hence to necessitate an affirmance thereof.

While such is the broad contention, it is followed up with the assertion, stated briefly, that there is a confusion in the authorities, due to a failure to distinguish between rules applicable only in certain jurisdictions, or under a specific state of facts, which rules, it is said, may be stated as follows:

1. In some jurisdictions, including Nevada, the policy of the state is declared by statute to the effect that a

certificate of acknowledgment is only prima-facie evidence that the purported grantor appeared and acknowledged, etc.; that in such jurisdictions the prima-facie evidence can be overcome by any satisfactory evidence believed by the trial court on the issue as to whether there was ever any appearance or any kind of acknowledgment.

It is asserted that as to the instant case there are three additional factors to be kept in mind:

a. That admittedly the mortgage does not bear the signature of Mrs. Orcio.

b. That under our homestead laws evidence purporting to divest a wife of her interest is subject to as close scrutiny as would be any evidence attacking a notary's certificate.

c. That in no event can a presumption be indulged in favor of the notary's certificate for the reason that the notary himself established that there was no acknowledgment.

2. In some states it is held that a certificate of acknowledgment involves a judicial act and in such states strong presumptions are indulged in favor of the notary's certificate, but that no such rule exists in Nevada.

3. It is also contended that in states where presumptions are indulged in favor of a certificate they only apply *after* it has been admitted or established that there was an appearance before the notary and an acknowledgment, and that *no* presumption exists in the first instance where the party sought to be bound denies that there was any acknowledgment whatever.

4. That the presumption which generally prevails in favor of the regularity of an act of a public official does not apply where it would place a charge or lien upon property.

■■ As to the first contention, to the effect that under section 1503 N. C. L. a certificate of acknowledgment is only prima-facie evidence, we may say that

we had this section in mind when we wrote our former opinion, and what we said in that opinion is in harmony with that view. In fact, we clearly manifested that view, after quoting from several authorities, by this statement: "Let us determine if the evidence in behalf of defendants Joe Orcio and wife to the effect that she did not sign and acknowledge the mortgage is so clear, cogent and convincing as to overcome the certificate of acknowledgment and adverse evidence."

We think the contention of respondent that the presumption in favor of the notary's certificate can be overcome by *any* satisfactory evidence believed by the trial court is too broad—whether the presumption is one recognized by statute, as with us, or recognized by the courts in those jurisdictions where there is no such statute. The presumption can be overcome by satisfactory evidence, but the courts have generally held that to constitute such satisfactory evidence it must be of the character we heretofore pointed out, that is, that it must be clear, cogent and convincing; and in determining what is such clear, cogent and convincing evidence, it is generally held that the uncorroborated testimony of an interested party is not of such character, as we will point out.

Is the contention that admittedly the mortgage in question does not bear the signature of Mrs. Orcio well founded? We do not so construe the evidence. She testified she did not sign it. Her husband testified that he signed her name to it in the presence of the notary and another. In this he is flatly contradicted by both. His testimony is worthless for the reason pointed out in our former opinion. The notary testified that he handed the mortgage to Mrs. Orcio without her signature to it, and explained the document; that she took it into the house and brought it back with her signature, stating that she knew all about it. If this evidence by the notary is true, she is bound by the signature, whether she signed it or not, because she adopted the signature as her own, even if it was actually written by

another. In addition to the authorities we cited in our former opinion to this effect are: Jansen v. McCahill, 22 Cal. 563, 83 Am. Dec. 84; Currier v. Clark, 145 Iowa, 613, 124 N. W. 622; Mallory v. Walton, 119 Miss. 396, 81 So. 113; Kerr v. Russell, 69 Ill. 666, 18 Am. Rep. 634, 639; Blaisdell v. Leach, 101 Cal. 405, 35 P. 1019, 40 Am. St. Rep. 65.

■ Point "b" made by respondent is not supported by citation of authority or by argument, and we know of no law establishing a different rule as to a certificate of acknowledgment to a homestead than applies to a certificate of acknowledgment to a conveyance of land not embraced in a homestead.

■ As to contention "c," to the point that the notary himself establishes that there was no acknowledgment, we merely wish to say that we do not so construe the facts of this case. We have pointed out, to our own satisfaction at least, that where one adopts the signature of another to a mortgage and so signifies by spoken word, nod of the head, or otherwise, it amounts to an acknowledgment.

Coming to the assertion that great confusion exists among the authorities, and the contention that a different rule exists in states where the taking of an acknowledgment is considered a judicial act, from that prevailing in those states where it is considered a ministerial act, in that greater weight attaches to an acknowledgment in the former than in the latter, and that Nevada belongs to the latter class, we may say that, conceding without deciding either contention, for the purpose of this case, the rule which we announced in our former opinion prevails in the great majority, if not all of the states which hold that the taking of an acknowledgment is a ministerial act.

Before proceeding further in this connection, it may be proper to suggest that the confusion or apparent confusion arises out of the fact that in some states, particularly as to married women, the statute provides that the party taking the acknowledgment shall explain the force

and effect of the instrument signed, and shall take the acknowledgment of her signature on an examination apart from and without the hearing of the husband. But even if an acknowledgment of a married woman were held judicial, it might be that it would be proper in the same jurisdiction to hold that the taking of the husband's acknowledgment, when there is no such provision as to him, is a ministerial act. But we do not decide this question, as it is not necessary, and suggest it only for future consideration in case the question ever arises, since our statute formerly required such an examination in case of an acknowledgment of a married woman, in view of the fact that such an acknowledgment may yet come before the court for consideration. However, this may never be a serious question in Nevada, in view of the fact that our statute has always provided that such certificate shall be "rebuttable." In this connection, we find that the supreme court of the United States held in Elliott v. Peirsol, 1 Pet. 328, 7 L. Ed. 164, that the taking of an acknowledgment is a ministerial act, whereas it held in Hitz v. Jenks, 123 U. S. 297, 8 S. Ct. 143, 31 L. Ed. 156, that it was judicial in character; and we find also that in earlier cases in Illinois it was held to be a judicial act, but in the more recent case of People, for Use of Munson, v. Bartels, 138 Ill. 322, 27 N. E. 1091, it was held to the contrary.

Reverting to the main question, while the great weight of authority is to the effect that the taking of an acknowledgment is ministerial, we do not find it necessary to determine whether or not the taking of the acknowledgment in question is a ministerial act (our statute no longer requiring an examination of a married woman separate and apart from her husband), and will assume that it is, since there is no contention to the contrary.

The following decisions, among others, hold that the taking of an acknowledgment is ministerial in character: Biscoe v. Byrd, 15 Ark. 655; Woodland Bank v. Oberhaus, 125 Cal. 320, 57 P. 1070; Wardlaw v. Mayer, 77

Ga. 620; People, for Use of Munson, v. Bartels, 138 Ill. 322, 27 N. E. 1091; Abrams v. Ervin, 9 Iowa 87; Com., for Use of Green, v. Johnson, 123 Ky. 437, 96 S. W. 801, 124 Am. St. Rep. 368, 13 Ann. Cas. 716; Gibson v. Norway Sav. Bank, 69 Me. 579; Lewis' Lessee v. Waters, 3 Har. & McH. (Md.) 430; Scanlan v. Wright, 13 Pick. (Mass.) 523, 25 Am. Dec. 344; Barnard v. Schuler, 100 Minn. 289, 110 N. W. 966; State, to Use of Alexander, v. Plass, 58 Mo. App. 148; Horbach v. Tyrell, 48 Neb. 514, 67 N. W. 485, 489, 37 L. R. A. 434; Odiorne v. Mason, 9 N. H. 24; Albany County Sav. Bank v. McCarty, 149 N. Y. 71, 82, 43 N. E. 427; Read v. Toledo Loan Co., 68 Ohio St. 280, 67 N. E. 729, 62 L. R. A. 790, 96 Am. St. Rep. 663; Ardmore Nat. Bank v. Briggs M. & S. Co., 20 Okl. 427, 94 P. 533, 23 L. R. A. (N. S.) 1074, 129 Am. St. Rep. 747, 16 Ann. Cas. 133; Keene Guaranty Sav. Bank v. Lawrence, 32 Wash. 572, 73 P. 680; Garcia v. Leal, 30 N. M. 249, 231 P. 631.

The general rule as to the requirement to overcome the certificate of acknowledgment is stated in 1 C. J. p. 896, as follows: "With one possible exception, the courts are all agreed that a bare preponderance of evidence is not sufficient to overcome the presumption in favor of a certificate of acknowledgment regular on its face; nor is loose and inconclusive evidence merely creating a doubt as to the truth of the certificate or contradicting it by implication only sufficient, but a certificate regular on its face can be overthrown only by evidence so clear, strong, and convincing as to exclude all reasonable controversy as to the falsity of the certificate. Indeed, some of the cases go to the extent of requiring the same degree of proof as is necessary in criminal cases, that is, proof beyond a reasonable doubt."

Of the courts cited above holding that an acknowledgment is ministerial, those which have considered the question and hold in accordance with the text just quoted from 1 C. J. are: Gray v. Law, 6 Idaho, 559, 57 P. 435, 96 Am. St. Rep. 280; Currier v. Clark, 145 Iowa, 613, 124 N. W. 622; Duff v. Virginia Iron, etc. Co., 136

Ky. 281, 124 S. W. 309; Gritten v. Dickerson, 202 Ill. 372, 66 N. E. 1090; Jaworski v. Sujewicz, 334 Ill. 19, 165 N. E. 147; Rouse v. Witte, 81 Neb. 368, 116 N. W. 43; Goulet v. Dubreuille, 84 Minn. 72, 86 N. W. 779; Black v. Purnell, 50 N. J. Eq. 365; 24 A. 548; Albany County Sav. Bank v. McCarty, 149 N. Y. 71, 43 N. E. 427; Willis v. Baker, 75 Ohio St. 291, 79 N. E. 466; Western Loan, etc. Co. v. Waisman, 32 Wash. 644, 73 P. 703; Winn v. Willmott, 138 Okl. 177, 280 P. 808; Futhey v. Potts (Mo. Sup.), 204 S. W. 180; Garcia v. Leal, 30 N. M. 249, 231 P. 631.

Thus we see that nearly all of the states in which it is held that the taking of an acknowledgment is a ministerial act have held that the evidence to overthrow a certificate of acknowledgment must be clear, convincing, cogent, and establish beyond a reasonable doubt that the party did not acknowledge as certified. The other jurisdictions mentioned which hold the taking of an acknowledgment to be ministerial do not seem to have had occasion to pass upon the pivotal question in this case.

Though we have taken the time to investigate this question, we do not think it very material, for the reason that nearly all of the jurisdictions make their conclusions turn upon the question of public policy, and it is just as sound a public policy to hold that a certificate of acknowledgment should not be lightly overturned in a state where it is held to be a ministerial act, as where it is held to be a judicial act.

In the following jurisdictions, among others, in which it is held that the taking of an acknowledgment is a ministerial act, it is held that the unsupported evidence of a grantor is insufficient to overthrow a certificate of acknowledgment: Gray v. Law, supra; Houlihan v. Morrissey, 270 Ill. 66, 110 N. E. 341, Ann. Cas. 1917A, 364; Mutual Life Ins. Co. v. Corey, 135 N. Y. 326, 31 N. E. 1095; Currier v. Clark, 145 Iowa, 613,124 N. W. 622; Goulet v. Dubreuille, supra; Baldwin v. Snowden, 11 Ohio St. 203, 78 Am. Dec. 303; Western Loan & S. Co. v.

Waisman, supra; Adams v. Smith, 11 Wyo. 200, 70 P. 1043; Comings v. Leedy, 114 Mo. 454, 21 S. W. 804.

In Rouse v. Witte, supra, it was said that the testimony of the grantor only slightly corroborated is insufficient to overcome the certificate of acknowledgment, and it is said in Van Orman v. McGregor, 23 Iowa, 300, and Herrick v. Musgrove, 67 Iowa, 63, 24 N. W. 594, that this is especially true when the certificate is supported by the testimony of the certifying officer. It was held in Ford v. Osborne, 45 Ohio St. 1, 12 N. E. 526, that the certificate of the officer will not usually be overcome by the testimony of a married woman corroborated by her husband.

In Black v. Purnell, 50 N. J. Eq. 365, 24 A. 548, it was held that the certificate supported by the testimony of the officer will not be overcome by the testimony of a married woman corroborated by the testimony of her husband.

In McGuire v. Wilson, 5 Neb. (Unof.) 540, 99 N. W. 244, it was held that the certificate of the officer must stand as against the testimony of the wife and her husband.

In Chaffee v. Hawkins, 89 Wash. 130, 154 P. 143, 157 P. 35, 37, the court said: "To overcome a formal instrument and certificate of acknowledgment, the proof must be clear, cogent, and convincing. This is obviously a requirement of more than a bare or even a measurable preponderance of the spoken testimony. It means that the testimony of witnesses shall not be weighed the one against the other only, but that the testimony of the one shall be measured against the other, supported as it is by one of the strongest presumptions of fact known to the law; that is, that an acknowledgment to a deed formally certified imports verity."

In Albany County Sav. Bank v. McCarty, 149 N. Y. 71, 43 N. E. 427, 430, it is said: "The rule governing the action of trial courts, as well as appellate courts, with power to review the facts, seems to be uniform in all

the states to the extent of requiring that a certificate of acknowledgment should not be overthrown upon evidence of a doubtful character, such as the unsupported testimony of interested witnesses, nor upon a bare preponderance of evidence, but only on proof so clear and convincing as to amount to a moral certainty."

In Parry v. Reinertson, 208 Iowa, 739, 224 N. W. 489, 63 A. L. R. 1051, it was held that it requires more than the unsupported testimony of the grantor to overcome an acknowledgment.

To the same effect is Bebout v. Old Kentucky Mfg. Co., 145 Ky. 756, 141 S. W. 406.

In Bennett v. Edgar, 46 Misc. 231, 93 N. Y. S. 203, it was said that to overcome the certificate of acknowledgment the proof must be so clear and convincing as to amount to a moral certainty.

Many authorities seem to attach considerable weight to the testimony of the officer certifying to an acknowledgment in support of the statements contained in the certificate (1 C. J. 895, n. 54), but we do not deem it necessary to consider them.

■ It is contended that where presumptions are indulged in favor of a certificate of acknowledgment it is only after it has been admitted or established that there was an appearance by the grantor before the notary and some kind of an acknowledgment shown.

Such cannot be the rule in Nevada. Section 1483 N. C. L. provides that when an acknowledgment is by an individual the certificate shall certify that the grantor "personally appeared before me, a notary public (or judge or other officer * * *), in and for............County [name of grantor] known (or proved) to me to be the person described in and who executed the foregoing instrument, who acknowledged to me that he (or she) executed."

In view of this section and the further fact that the prima-facie presumption is in favor of the certificate, there can be no merit in the contention.

As to the fourth contention of respondent, we must say that, notwithstanding what was said in Knox v. Kearney, 37 Nev. 393, 142 P. 526, we are thoroughly satisfied it has no application to the situation in hand. That was a case not dealing with acknowledgments to deeds, and public policy demands that the rule we have stated be recognized and enforced.

If we were to take any other view than the one indicated, titles to real estate in this state would be so insecure that no one would dare purchase real property in many instances. If we were to take the view contended for, the repudiation of acknowledgments might develop into a racket. All that a grantor would have to do in case of the death of the officer taking his acknowledgment would be to flatly contradict the acknowledgment in order to set aside the conveyance.

Using language similar to that used by a distinguished jurist some years ago, it would shock the moral sense of a community to say that testimony in behalf of a grantor who sees a fortune in his grasp, other than clear, cogent, convincing and amounting to a moral certainty, may destroy the deliberate act of an officer appointed by law to certify to acknowledgments.

We are of the opinion that the conclusion and order formerly made were proper, and now so order.