CLEO HUTCHINS, Appellee, v. JONES PIANO COMPANY, Appellant. No. 39892.

DECEMBER 13, 1929.

*Russell E. Ostrus,* for appellant.

*Brown, Brown & Harvey,* for appellee.

KINDIG, J.—Cleo Hutchins, the plaintiff and appellee, during the times herein named, was a married man, and a resident of Iowa. On November 10, 1926, the appellee and his wife purchased a mahogany piano from the defendant-appellant, or its predecessor in interest. The consideration therefor was $275, payable in installments. To evidence such indebtedness, the debtors gave appellant their combined note and a conditional bill of sale, together with an assignment covering appellee's future wages under an employment then existing with the Red Ball Stores, Incorporated, at Des Moines. Acknowledgment of the assignment was not made by the assignors on November 10, 1926, but is alleged to have been made by them on later dates. It is claimed that such acknowledgment was made by appellee and his wife on the following respective dates: March 29, 1928, and May 4th thereafter. Each assignor thus acknowledged the instrument when the other was not present. When the piano was purchased and the assignment of wages given by appellee and his wife, the former was in the employment of the Red Ball Stores, Incorporated, aforesaid. Such employment continued without interruption until the 12th day of May, 1928. Appellant, on May 4, 1928, served notice of its assignment on said employer, the Red Ball Stores, Incorporated. Consequently the employer retained $10 from appellee's wages and delivered the same to the appellant. At that time, Mr. Else, the warehouse superintendent for the Red Ball Stores, Incorporated, made known to appellee and appellant that wage assignments were annoying. Furthermore, the representative of the employer suggested that another notice would cause appellee's discharge. But appellee failed to pay sums due on the piano obligation, and accordingly, on May 11, 1928, the second assignment notice was served by appellant upon appellee's employer. As a result thereof, the Red Ball Stores, Incorporated, discharged ap-

pellee, and, at the same time, paid to appellant $23.50, all wages then due. Appellee, at the time he was thus discharged, received a weekly wage of $23.50. After leaving the employment aforesaid, appellee was idle two weeks. Then, at the end of that period, he was again employed by the Ford automobile factory in Des Moines, at a weekly wage of $25. In the meantime, on May 14, 1928, the appellee commenced this action against appellant, to recover from it damages for the wrongful discharge.

Three elements of damages are asserted. They are: First, time loss; second, mental pain and suffering; and, third, malice. Basis for the action is the alleged void assignment. According to appellee's theory, the assignment was void because not properly acknowledged. Eliminating from the issues thus raised the punitive or exemplary damages claimed, the municipal court submitted the other questions to the jury. Complaint is made by appellant because the court refused to direct a verdict in its favor. In addition thereto, appellant argues other propositions for reversal.

I. Was the assignment void because not properly acknowledged? Section 9454 of the 1927 Code provides:

"No sale or assignment, by the head of a family, of wages, whether the same be exempt from execution or not, shall be of any validity whatever unless the same be evidenced by a written instrument, and if married, unless the husband and wife sign and acknowledge the same joint instrument before an officer authorized to take acknowledgments."

No contention is made that appellee is not the head of a family. He was a married man, as previously related. That the statute applies to the assignment in question is conceded by appellant. While thus granting such statutory relationship, appellant contends, however, that the acknowledgment was in every respect legal and valid. For the purpose of overcoming the purported acknowledgment and the presumptions arising therefrom, appellee insists that there never was any intention to acknowledge, either on his part or that of his wife. Continuing his declaration in this regard, appellee says that the purported acknowledgment is alleged to have been taken by an employee of appellant's. So the claim is made that, upon each occasion when it is said the respective parties acknowledged the

instrument before the notary, it was thought that said official was acting in the capacity of a collector, endeavoring to obtain past due installments under the contract. Whether the lack of knowledge and intention asserted by appellee could in any event invalidate the acknowledgment, we do not now suggest or decide. This acknowledgment, as before related, was separately made by appellee and his wife. She acknowledged the same at her home, while he appeared before the notary at appellant's place of business. Certification of the notary is in due and regular form. Hence the burden was upon appellee to prove his contention by clear and convincing evidence. Great weight is given to the certificate of acknowledgment. *Borland v. Walrath,* 33 Iowa 130; *Herrick v. Musgrove,* 67 Iowa 63; *Swett v. Large,* 122 Iowa 267; *Gribben v. Clement,* 141 Iowa 144; *Currier v. Clark,* 145 Iowa 613; *Roberts v. Roberts,* 176 Iowa 610; *Sheldahl Sav. Bank v. Farmers Grain Co.,* 197 Iowa 436; *Parry v. Reinertson,* 208 Iowa 739. The notary public who misstates the material fact in the certificate shall be liable for damages, and guilty of a misdemeanor. An officer is pre-sumed to obey the law and perform his official duty. *Roberts v. Roberts* (176 Iowa 610), supra. Therefore, presumption is in favor of the acknowledgment. Added to that presumption is the testimony of the notary himself, who said that the certificate correctly stated the facts. Concession is made by appellee that he was before the man who took the acknowledgment. Likewise, the wife admits that she was in the presence of the same man. Both the husband and the wife admit that the contract was executed, and that the instrument now in the record is the one they signed. Rather mild denials are made by them concerning the acknowledgment. There was no jury question presented in this respect, so far as the wife is concerned, because the man who took the acknowledgment told her he was a notary public, and explained his purpose in the premises. Under those conditions, she admitted to him her signature, and declared it to be her voluntary act and deed.

Notwithstanding that, appellee maintains that, so far as he is individually concerned, there was no acknowledgment. About this, the notary's statements are not so explicit. Insistence is made by appellee that he did not know his acknowledg-

ment was being taken. Nevertheless, when all the evidence is carefully weighed, it fairly appears that he was fully advised. Yet, assuming, without deciding, that the acknowledgment of appellee was not properly taken, the judgment rendered in the municipal court is not sustained by the record.

II. Why is appellant bound to pay appellee damages even though the acknowledgment was defective? A representative of the Red Ball Stores, Incorporated, testified that the company "wouldn't keep a man in its employment that was owing * * *. Wouldn't have anything to do with wage assignments at all." Again, this witness said to appellee: "We won't have anything to do with any assignments from any of our employees. They must be taken care of * * *." Furthermore, the witness warned appellee that the employer "would not keep him any longer * * * until the bills were cleaned up and everything taken care of."

Obviously, the employer was not concerned whether the acknowledgment was valid or invalid. Objection was made by it because there was even a purported assignment. Appellant had what appeared to be a valid assignment, duly acknowledged. It believed in the validity thereof when the notices above named were served on the employer. Afterwards, in the municipal court, the appellant continued to have faith in the assignment, and finally in this court, it still maintains that the assignment is legal and effective. Armed with such an instrument, appellant had the legal right to attempt its completion by serving notice thereof on the employer. What else did appellee expect? If this was not desired, why was the assignment given? Defeat for appellant's claim would not confer upon appellee a basis to recover damages from the former. *Haines v. Welker & Co.*, 182 Iowa 431. Were it otherwise, a penalty thereby would be imposed upon appellant for attempting to assert its claim. Upon the subject of an invalid assignment where damages were sought by the assignee from the assignor, we said in the *Haines* case, supra:

"The plaintiff was at liberty to borrow or not to borrow. This carried with it the right to refuse making the assignment. He chose to make it. He knew that he gave it to secure his debt; he gave it so that the debt might be satisfied out of the

wages assigned. He knew this could not be effected without advising the employer of the existence of the assignment. * * * So that, in the last analysis, the claim of the plaintiff at this point is that, because he gave a security which might lose him his employment if brought to the knowledge of his employer, the one who took the assignment is responsible for loss caused because the employer became advised of such assignment. It was no wrong to take the assignment; it was no wrong to advise the employer of its existence. If it was a wrong, it was as much the act of the plaintiff as of the defendant, and he may not recover on this account, under the maxim *volenti non fit injuria.*"

Manifestly, appellant had a right to demand and receive the assignment in the case at bar. Equally it was appellee's right to give or refuse the assignment. Decision was made by appellee in favor of the assignment, and accordingly the same was executed. With that instrument in its possession, appellant had a right to meet all legal requirements necessary for the collection of the wages thereunder. The law did not impose a duty of secrecy upon appellant, and require it to refrain from revealing to the employer the existence of the assignment. Necessarily, then, appellant is not responsible for any loss suffered by appellee in the manner and way alleged. Resultantly, appellant's motion for a directed verdict should have been sustained.

III. But appellee argues that, notwithstanding such conclusion, he is entitled to receive the wages collected by appellant under the alleged assignment. His theory at this point is that,  the assignment being void because of the defective acknowledgment, these wages were not legally transferred. Conceding again, without determining, that the assignment was void, yet appellee is not entitled to recover this item from appellant. Before the wages were paid over by the employer, appellee, at most, merely held a claim therefor. He did not own any property in the hands of the employer. Said claim for wages was to be paid by the employer from its general funds. Wherefore, when, under the alleged assignment, the money was transferred from the employer to appellant, the latter did not receive appellee's property. Whatever appellee owned at that

time was represented by his claim for wages. Consequently, if such claim was not assigned to appellant, it remains with appellee, and can still be asserted against the employer. Such claim was not destroyed or taken away, unless it was transferred by the assignment. Nothing is shown anywhere in the record to indicate that appellee's claim for wages has been satisfied or in any way nullified by appellant if the assignment aforesaid is invalid.

For the reasons above indicated, the judgment of the municipal court must be, and hereby is, reversed.—*Reversed.*

ALBERT, C. J., and EVANS, FAVILLE, and GRIMM, JJ., concur.