WAITT BROS. LAND, INC., Appellee,

v.

Lewis F. MONTANGE, Florence A. Montange and Payne Sargisson, Appellants.

No. 2-59062.

Supreme Court of Iowa.

Sept. 21, 1977.

Smith & Smith, Sioux City, for appellants.

Goldberg, Mayne, Probasco, Berenstein & Yeager, Sioux City, for appellee.

Heard by MOORE, C. J., and MASON, LeGRAND, REES and UHLENHOPP, JJ.

REES, Justice.

This is an appeal by Lewis F. Montange, the owner of a farm premises in Woodbury County, his wife, Florence, and Payne Sargisson, the tenant on the farm, from the provisions of a decree ordering specific performance of a contract for the sale of the subject farm premises to the plaintiff. We affirm the judgment and decree of the trial court.

Plaintiff, Waitt Bros. Land, Inc., is a corporation engaged in farming and cattle feeding operations. Lewis Montange is a man of advanced age, an invalid and in poor physical condition. His wife, Florence, is also a person of advanced age. The defendants Montange both resided in the village of Luton in a building which had at one time been utilized by them as a general store.

Will Feight, a real estate broker operating under the tradename and style of Feight Land Company, maintained an office in Sioux City. On April 7, 1970 defendant Lewis Montange signed a written agreement listing the real estate which is the subject matter of this litigation, for sale with the Feight Land Company, the listing agreement expiring January 1, 1971. The sale price fixed by Montange in the listing agreement was $150,000. Sometime later Montanges listed the land for sale with Clark Land Company for $147,000.

Sometime early in 1973 the representatives of the plaintiff contacted Mr. Feight and made an oral offer to purchase the Montange land for $100,000. This offer was relayed to Montange by Feight who declined to accept the $100,000 but did agree to sell the premises for $110,000. On or about May 23, 1973 Feight submitted a real estate contract to the defendants Montange which was signed apparently by Florence Montange affixing the name of Lewis F. Montange and her own name to the contract.

The contract was introduced into evidence in the trial of this case, and trial court found that Lewis Montange did not sign the contract, but that it was apparent from the handwriting and other circumstances that Florence Montange signed Lewis Montange's name to the contract. The court further found Lewis was present at the date Florence signed her name as well as his, and that Florence signed the contract for Lewis with his knowledge and consent. The court further found that the record established that for the past couple of years Florence had been signing papers for him.

Feight was not a notary public, and made arrangements for Phyllis Bails, the widow of an attorney and a notary public, who resided in Sloan, to go to the Montange home and notarize the signatures on the contract. Feight forwarded the contract to Mrs. Bails by mail and she then took the contract to the Montange's home in Luton. The parties there had a conversation regarding the death of Mrs. Bails' husband and although Mrs. Bails did not specifically inquire whether the signatures on the contract were those of both Lewis and Florence, she did advise them that she was there to notarize their signatures, exhibited the contract to them and explained what she was doing. No objection was made by either Lewis or Florence to Mrs. Bails' notarizing the contract, and neither disclaimed the signatures in any way or indicated that the signatures were not the signatures of the persons they purported to be. The trial court found the Montanges knew the purpose of the visit of Mrs. Bails to their home, and concluded that Lewis Montange adopted the signature placed on the contract for him by his wife, and further concluded he permitted the signature to be sworn to by the notary.

Trial court found there was no competent evidence, medical or otherwise, to establish that either Lewis or Florence Montange did not know the nature and consequences of the transaction, and that no undue influence was exerted upon them to induce the execution of the contract of sale. The court ordered and directed the defendants to perfect title and deliver possession to the plaintiff and to pay over the net rents and profits which had accrued from March 1, 1974, the date upon which the contract provided possession of the farm was to be delivered to plaintiff. From the foregoing order and judgment, the defendants appeal.

Defendants state the following issues for review:

(1) Trial court erroneously found and concluded that defendant Lewis Montange had effectively acknowledged execution of the real estate contract by failing to object to Mrs. Bails' notarization of the contract and by failing to disclaim the signature where the record shows that the notary did not inquire whether the signatures on the contract were those of Lewis and Florence Montange, and that Lewis Montange did not at any time admit its due execution.

(2) That in the event it is found and determined the Montanges executed the contract, under our *de novo* review in this appeal we should conclude and find that the Montanges lacked capacity to execute the sales contract in the light of the testimony of one Lloyd Johnson, a personal friend of the Montanges, reciting instances in which the Montanges had loaned sums of money to strangers without obtaining enforceable security in return, and also reciting his observations of the conditions under which the Montanges lived.

■ I. In this equity proceedings, our review is *de novo*, and we give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but are not bound by such findings. Rule 344(f)(7), Rules of Civil Procedure.

II. The first issue for resolution is whether Lewis Montange acknowledged the execution of the contract to sell his land to Waitt Bros. Land, Inc., or otherwise adopted his purported signature placed on the contract by his wife as his own. The plaintiff admitted and the trial court found that Lewis Montange's purported signature on the contract was not in fact his signature, but was placed on the contract by Florence. According to the record, Mr. & Mrs. Mon-

tange have little recollection of the visit to them by Mrs. Bails who brought the contract to their home for them to acknowledge their signatures thereon. Admittedly, Mrs. Bails did not ask whether it was their signature on the contract but did exhibit the contract to them. Lewis gave the contract back to Mrs. Bails and made no objection when the notary filled out the acknowledgment form. Mrs. Bails testified that she thought Lewis Montange comprehended the purpose of her visit and acknowledged the signature on the document as his own.

Defendants claim that under these facts Lewis Montange did not properly acknowledge his wife's writing of his name as his signature, and therefore did not adopt Florence's signing his name on the contract. Defendants assert that in order for Lewis to acknowledge his wife's writing as his own signature, he had to make an affirmative indication of that fact. They cite, in support of their position, *McQuatt v. McQuatt*, 320 Mass. 410, 69 N.E.2d 806. In that case a notary public was present to secure an acknowledgment to an instrument for the transfer of land from the husband to the wife. The notary witnessed the signing of the deed, but had no conversation with the husband about the acknowledgment. In holding that the deed was not properly acknowledged, the court said that the husband said nothing to the notary which indicated he was acknowledging the execution of the instrument as the product of his own free act and deed. Therefore, according to a Massachusetts court, evidence of a proper acknowledgment was deficient and that there was no actual acknowledgment of the deed.

Plaintiff, in support of its position, cites *Picetti v. Orcio*, 57 Nev. 52, 58 P.2d 1046, rehg. 67 P.2d 315. In *Picetti*, a mortgage was executed on certain property partially owned by a husband and a wife. The wife had not signed the mortgage when the notary appeared to take her acknowledgment to the instrument. The notary handed the document to her and explained its import. The wife returned the document to the notary with her signature on it and said

that she knew all about it. In regard to these facts, the court said on rehearing: "If this evidence by the notary is true, she is bound by the signature, whether she signed it or not, because she adopted the signature as her own, even if it was actually written by another." *Picetti v. Orcio, supra*, at p. 317 of 67 P.2d. The court further went on to say that there was a proper acknowledgment since the wife did not overcome the presumption of validity of a notary's certificate with clear and convincing evidence, and further said: "We have pointed out, to our satisfaction at least, that where one adopts the signature of another to a mortgage and so signifies by spoken word, nod of the head, or otherwise, it amounts to an acknowledgment."

Plaintiff here contends *Picetti* supports the proposition that conduct before a notary can be an admission of adoption or acceptance of the execution of the instrument which is necessary to constitute a valid acknowledgment.

We have never faced this exact issue before; however, we have clearly said that once there has been a valid acknowledgment of an instrument, the parties are bound to the signatures placed on the acknowledged instrument even if those signatures were not written by their own hands. See *Stephenson v. Stephenson*, 247 Iowa 785, 792, 74 N.W.2d 679, 683; *Currier v. Clark*, 145 Iowa 613, 617, 124 N.W. 622, 623; and *Morris v. Sargent*, 18 Iowa 90, 98.

In *Currier, supra*, at p. 617 of 145 Iowa, p. 623 of 124 N.W., we said: "So far as the mortgage was concerned, the certificate of acknowledgment was sufficient proof of its due execution by the acknowledging parties. It was not essential to its validity that their names should have been signed in their own handwriting. If they adopted the signatures, by whomsoever made, and acknowledged the instrument, it was a valid instrument. The certificate of a notary in such a case will not be lightly overcome. (citations)"

A notarial certificate can be made invalid only by clear and convincing evi-

dence. See *First Trust Joint Stock Land Bank of Chicago v. McNeff*, 220 Iowa 1225, 264 N.W. 105 and *Hutchins v. Jones Piano Co.*, 209 Iowa 394, 228 N.W. 281. In *First Trust Joint Stock Land Bank of Chicago v. McNeff, supra*, at p. 1229 of 220 Iowa, p. 107 of 264 N.W., we said: "We start out with a legal proposition which is well established by this court in this state, that where the certificate of the notary is in due and legal form, the instrument is admissible in evidence without further proof, and the burden is upon the person challenging the truth of its contents to prove his contention by clear and convincing evidence. This court has repeatedly said that 'great weight is given to the certificate of acknowledgment.'" Such weight is given to proper acknowledgments of real estate transactions so that there may be certainty in the area of real estate dealings. See cases above cited. In light of these authorities which give great weight to an acknowledgment, it is clear that Mr. Montange would be bound by the contract if by his conduct he acknowledged it in the presence of Mrs. Bails.

In 1 Am.Jur.2d, Acknowledgments, § 29, we find: "* * * all that is required at the present time is that the person making the acknowledgment appear before the officer for the purpose of acknowledging his instrument and in some manner, with a view to giving it authenticity, make an admission to the officer of the fact that he has executed the instrument." In connection with this statement, Am.Jur.2d cites both *McQuatt, supra*, and *Picetti, supra*. As indicated above, *McQuatt* suggests that the person making the acknowledgment must make a declaration in order to have a valid acknowledgment, while *Picetti* leaves open the possibility that conduct by the party before an officer can lead to a valid acknowledgment of the instrument.

■ The position of defendants goes against the principles giving great weight to notarial certificates and the principle that a party contending an instrument is invalid must prove by clear and convincing evidence that contention is correct. Under the definition of an acknowledgment, according to Am.Jur.2d, *supra*, all that is required for a valid one is that the person make an admission that he has executed the instrument. To say that he can only admit that by making a verbal declaration to that effect and cannot demonstrate the fact by his conduct before the notary is to dignify form over substance. An admission by conduct (in this case by silence) and his other actions before the notary, is not a new principle and has been applied in the evidence field repeatedly. See *Doherty v. Edwards*, 227 Iowa 1264, 1272, 290 N.W. 672, 676. We therefore adopt the *Picetti* view and carry it to its logical conclusion by finding and holding that conduct before a notary can constitute an admission which is requisite for due execution and proper acknowledgment of an instrument.

■ The trial court was correct in finding that Mr. Montange had acknowledged the contract. Testimony was introduced showing that Mrs. Bails had told the Montanges the purpose for her visit, namely, to acknowledge their signatures on the contract, and exhibited the contract to them. She testified she thought Mr. Montange comprehended her purpose, and that after Mr. Montange looked at the contract, talked with Mrs. Bails and gave the contract back to her, she completed the jurat on the contract without Mr. Montange objecting to her so doing. In light of this testimony, we are constrained to hold that Mr. Montange acknowledged the instrument by his conduct in not objecting to Mrs. Bails' completing the jurat thereon. The acknowledgment was proper, and Lewis Montange adopted his name placed on the contract by Florence as his own signature, and therefore was bound to honor the contract unless he was incompetent at the time he entered into the same. There was no clear and convincing evidence rendering the due execution and acknowledgment of the contract invalid.

III. The second issue presented for review is whether Lewis and Florence Montange were competent to execute the contract in question. They alleged, responsive-

ly to plaintiff's petition, that they lacked capacity to enter into a contract for the sale of land. Plaintiff claims the defendants did not prove such lack of capacity by clear and convincing evidence, and that therefore the judgment of the trial court was correct.

We have said that "the party asserting that a contract is void must prove by clear and convincing evidence that the person executing the contract did not possess sufficient consciousness or mentality when the contract and the deed were executed, to understand the import of (his) acts." *Costello v. Costello*, 186 N.W.2d 651 (Iowa 1971). See also *In re Estate of Faris*, 159 N.W.2d 417, 420 (Iowa 1968) and *Stephenson v. Stephenson, supra.*

We have said with relation to a party's capacity to enter into a contract that the test is not the same as for testamentary capacity. "A higher degree of mental competence is required for the transaction of ordinary business and the making of contracts than is necessary for the testamentary disposition of property." See *In re Estate of Faris, supra*, 159 N.W.2d at 420. See also *Costello v. Costello, supra.*

We have also said in connection with the issue of capacity that mental weakness caused by physical impairments without evidence of a grossly disadvantageous contract, fraud, or undue influence is not enough to set aside a contract. See *Urbain v. Speak*, 258 Iowa 584, 139 N.W.2d 311; *Sours v. Colvin*, 244 Iowa 40, 55 N.W.2d 462; and *Wilkie v. Sassen*, 123 Iowa 421, 99 N.W. 124.

In the light of the foregoing authorities, we review the record to determine whether defendants proved by clear and convincing evidence that Lewis and Florence Montange lacked the capacity to enter into the contract in question.

At trial defendants introduced the deposition of a Mr. Johnson who advanced the opinion that Lewis Montange lacked the capacity to enter into the contract, basing his opinion on personal observations. Johnson noted that Lewis had engaged in several bad business deals; however, much of the testimony of Johnson was based on hearsay and went into the record in the face of proper objections thereto. Johnson also talked about his visits to the Montange home, reciting that he found the house was dirty, with garbage, papers and dog feces lying about the floor. On the basis of such observations, Johnson concluded Lewis Montange was incapable of handling his own affairs and was not competent to enter into the contract in question.

Evidence was introduced further tending to establish the fact the land at the time of the execution of the contract was worth in excess of the $110,000 contract price. One Herbold, a witness for the defendants, advanced the opinion that the land was worth $150,000. On the other hand, however, Leonard Dierking, a real estate appraiser, testified the Montange farm was worth only $100,770.

■ Our review of the record persuades us that defendants did not prove by clear and convincing evidence that Lewis Montange lacked the mental capacity to enter into the contract. Johnson's testimony of Lewis' having engaged in disadvantageous business deals in the past was not persuasive, and in any event, was based on hearsay. The fact that the Montange home was untidy is not enough to show lack of capacity and may have been the consequence of Lewis' and Florence's advanced age and physical infirmities. Mere mental weakness, without the showing of fraud, undue influence or a grossly unfair contract is not sufficient to void the contract. In this matter the defendants attempted to show that the contract price was too low. However, the conflicting evidence on this point by the two experts obviously did not clearly and convincingly establish such fact.

On the whole record, we must hold defendants did not prove incapacity of Lewis or Florence Montange by clear and convincing evidence.

IV. We conclude that under our *de novo* review of the record in this case we find nothing to justify a reversal. We therefore affirm the trial court.

AFFIRMED.