689 A.2d 82

**Glenda R. POOLE**

**v.**

**Herbert S. HYATT and James G. Day, Personal Representatives of the Estate of Ethel J. Poole.**

**No. 17 Sept. Term 1996.**

Court of Appeals of Maryland.

Feb. 19, 1997.

Malcolm B. Kane (Lloyd, Kane, Wieder & Willis, P.A., on brief), Ellicott City, for Petitioner.

Robert A. Meier, Jr., Damacus, for Respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, RAKER and WILNER, JJ.

WILNER, Judge.

The question presented here is whether, for there to be a valid acknowledgment of a deed or of a power of attorney authorizing the conveyance of real estate, the person signing the instrument must make an affirmative oral declaration in the presence of the notary public confirming the signatory's understanding of the instrument and his or her intent in executing it. The answer is "no."

## I.  *BACKGROUND*

This appeal arises from a dispute over property in Montgomery County, Maryland acquired more than 60 years ago by Ethel J. Poole (Ethel) and her husband, N. Purdum Poole. The Pooles built a home for themselves on the property and later built one for their son, Bernard. Bernard occupied the second house until his divorce in the 1950's, when he moved to York, Pennsylvania, never to return. The Pooles thereafter rented the second house.

N. Purdum Poole died in 1958. In 1976, Ethel, then 76 years of age, conveyed the entire tract to herself and Bernard, as "joint tenants with the right of survivorship." She claimed that the purpose of the conveyance was to save estate taxes upon her death. Bernard neither requested nor received any income from the property, and he made no contribution to its upkeep.

Bernard's health began to fail in 1985. He was, at the time, living with petitioner, Glenda Donivan, now Glenda Poole, whom he married in 1990. When Bernard became unable to work, Ethel began to provide financial assistance, mostly in the form of checks made payable to Bernard. She claimed that Glenda had informed her that some of the expenses were

reimbursable from insurance maintained by Bernard and that Glenda promised to repay those amounts when the insurance proceeds were received.

In December, 1991, Glenda hired a Pennsylvania attorney, Robert Clofine, to prepare a durable power of attorney and will for Bernard in favor of herself. Mr. Clofine brought the documents to Bernard's home where, on December 17, 1991, Bernard signed them. We are informed that, in his will, Bernard left his entire estate to Glenda. In the power of attorney, Bernard appointed Glenda as his attorney-in-fact, with broad power to manage his real and personal property. The document mentioned the Montgomery County property and gave Glenda the power to sell it "for such consideration and upon such terms as [Glenda] shall think fit" and to execute, acknowledge, and deliver deeds for its conveyance. The power of attorney also purported to give Glenda an unrestricted right "[t]o make gifts."

Bernard's signature on the power of attorney was notarized by Mr. Clofine. In his certificate, Clofine attested that Bernard, "known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument" had personally appeared "and acknowledged that he executed the same for the purposes therein contained."

Two months later, at Glenda's request, Mr. Clofine prepared a deed under which Glenda, acting as Bernard's "duly constituted attorney-in-fact," conveyed Bernard's undivided interest in the Montgomery County property, which he then held as joint tenant with Ethel, to Bernard and Glenda, as tenants by the entireties. Glenda signed that deed, for which there was no consideration, on February 22, 1992. Clofine notarized the document, attesting that Glenda had personally appeared, that she was known or satisfactorily proven to be the person whose name was subscribed to the instrument as attorney-in-fact for Bernard, and that she acknowledged that she executed the deed as the act of her principal for the purposes therein contained.

Bernard died three days later. The deed was recorded in Montgomery County on March 2, 1992, although Ethel did not learn of it until she received her tax bill in July, 1992. Ethel died in October, 1992. On December 16, her estate filed this action in the Circuit Court for Montgomery County.

In Count I, Ethel[1] claimed that the power of attorney was obtained by fraud, duress, and coercion, that Bernard was not competent to sign it, and that it did not authorize Glenda to convey the property. For those reasons, she sought a ruling that the deed executed by Glenda was ineffective and an order requiring her to reconvey the property. On the same allegations and the further averment that, in obtaining the power of attorney, Glenda abused a confidential relationship she had with Bernard and violated the trust reposed in her, Ethel sought, in Count II, a constructive trust on the property. The remaining three counts concerned the funds advanced by Ethel. She sought an accounting (Count III), compensatory and punitive damages for fraud (Count IV), and compensatory damages for what appears to be an allegation of negligent misrepresentation (Count V).

Glenda answered the complaint and filed a counterclaim seeking a partition of the property and an accounting for rents and profits from February 25, 1992—the date Bernard died.

After taking Mr. Clofine's deposition, Ethel filed a motion for partial summary judgment on Counts I and II on a new theory, not pled in the complaint. She claimed, based on Clofine's deposition testimony, that neither Bernard nor Glenda had made any oral statement in the presence of Clofine acknowledging that they were signing the respective documents for the purposes contained therein. On that basis, she argued that there was no acknowledgment of either the power of attorney or the deed and, for that reason, both were ineffective.

---

1. For convenience, we shall refer to respondent (plaintiff below) as Ethel, although her estate is the actual litigant.

In June, 1994, the court granted that motion, holding that both the power of attorney and the deed were void because of defective acknowledgments. In November, 1994, the court granted Glenda's motion for summary judgment on Counts III, IV, and V of Ethel's complaint, essentially upon a finding that all of the funds advanced by Ethel went either to Bernard or for his benefit and that, to the extent Glenda made any promise to repay those funds, it was unenforceable under the Statute of Frauds.

Both parties appealed to the Court of Special Appeals. In a *per curiam* opinion filed November 27, 1995, that court handed Ethel a nearly complete victory. It affirmed the judgment entered on Counts I and II, concluding that Clofine's "conceded failure to obtain Glenda's actual acknowledgment rendered the deed void *ab initio* and, thus, the attempted conveyance failed." It vacated the summary judgment entered for Glenda on Counts III, IV, and V, concluding that triable issues were presented on those counts. We granted Glenda's petition for *certiorari* to consider the two questions presented therein:

(1) Is an acknowledgment on a deed and power of attorney defective if the notary public, having watched the person sign the documents, does not read the language of the acknowledgment certificate aloud to the signatory and ask if the act was free and voluntary—or utilize other such words to further confirm the voluntariness, etc. of the act?

(2) If such failure does render the acknowledgment defective, is the defect such to render the deed or other instrument void?

## II. *DISCUSSION*

### A. Preliminary Issues

#### (1) *Curative Act*

There is one argument that would have absolutely defeated Ethel's motion for summary judgment on Counts I and II and required a trial on the allegations in her complaint, and

possibly on Glenda's counterclaim as well, but it was never raised by Glenda in her response to the motion. Nor was it raised in the Court of Special Appeals or in Glenda's petition for *certiorari*, although counsel conceded at oral argument before us that he was aware of it.

Md.Code (1974, 1996 Repl.Vol.), § 4–109(b) of the Real Property article, provides that, as to a deed recorded after January 1, 1973, any failure to comply with the formal requisites, including a defective acknowledgment, "has no effect unless it is challenged in a judicial proceeding commenced within six months after [the deed] is recorded." The deed in question was recorded in March, 1992. This action was not filed until December, 1992. To the extent that Ethel's claim rested upon the alleged defective acknowledgment, which was the sole basis for her motion for summary judgment, it is unquestionably barred by § 4–109.

The problem for us is that the issue of the curative statute was not raised in the petition for *certiorari* or in the briefs, and it is therefore not really before us. For the reasons shortly to be explained, we shall reverse the judgment entered on Counts I and II, as affirmed by the Court of Special Appeals, on the issues raised in the petition. Had the curative statute been properly raised in the circuit court, neither we nor the Court of Special Appeals would have been put to the trouble of answering what would essentially have been a moot point.

### (2) *Does Pennsylvania or Maryland Law Apply?*

A second penumbral annoyance concerns the question of whether this case is to be resolved under Pennsylvania or Maryland law. Two instruments are challenged here—the power of attorney executed by Bernard in December, 1991, and the deed executed by Glenda in February, 1992. Both documents were drafted and executed in Pennsylvania. In the circuit court and in the Court of Special Appeals, Glenda took the position that both documents were subject to Maryland law. The deed obviously pertained to Maryland real estate, and, although the power of attorney was general, it too was

required to be recorded in Maryland in order to make the deed effective. Real Prop. art., § 4–107. Presumably on that basis, Glenda agreed that the validity and interpretation of the power of attorney was governed by Maryland law. Ethel did not argue otherwise.

Notwithstanding the lack of any disagreement on this point, the Court of Special Appeals held that the power of attorney was governed by Pennsylvania law, although, because the court concluded that the deed itself was defective, it never addressed whether the power of attorney was valid under Pennsylvania law. In contrast to the position that she took previously, Glenda now contends that the power of attorney should be construed in accordance with Pennsylvania law. It is essentially a non-issue. Pennsylvania and Maryland have both adopted the Uniform Acknowledgments Act, and neither party has provided us with any authority suggesting that Pennsylvania would construe its statute differently than we propose to construe the Maryland statute.

## B. Statutory Provisions

■ Maryland has two statutes dealing with the form of acknowledgments on instruments concerning real property. Title 4, subtitle 2 of the Real Property article sets forth a number of forms which § 4–201 declares to be "sufficient for the purpose intended." Section 4–204 contains three forms of acknowledgment. The pertinent one here is that provided for in § 4–204(c)—an acknowledgment taken out of State:

"State of ........ ........ County, to wit: I hereby certify, that on this ..... day of ........, in the year ........, before the subscriber, (here insert the official style of the officer taking the acknowledgment), personally appeared (here insert the name of the person making the acknowledgment), and acknowledged the foregoing deed to be his act.

Seal of the court

In testimony whereof I have caused the seal of the court to be affixed (or have affixed by my official seal), this ..... day of ........ A.D. ........"

Md.Code (1957, 1995 Repl.Vol.), art. 18 contains the Uniform Acknowledgments Act. Section 1 states that an instrument may be acknowledged in the manner and form provided by the laws of Maryland (which would include Real Prop. art., § 4–204) or as provided in art. 18. The key provisions are §§ 5 and 7. Section 5 provides that "[t]he officer taking the acknowledgment shall know or have satisfactory evidence that the person making the acknowledgment is the person described in and who executed the instrument." Section 7 sets forth forms for acknowledgments. The one for individuals states:

"State of . . . . . . . .

County of . . . . . . . . .

On this the . . . . day of . . . . . . . . ., 19. . ., before me, . . . . . . . . ., the undersigned officer, personally appeared . . . . . . . . ., known to me (or satisfactorily proven) to be the person whose name . . . . . . . . subscribed to the within instrument and acknowledged that . . . . he . . . executed the same for the purposes therein contained.

In witness whereof I hereunto set my hand and official seal."

## C.   The Function Of An Acknowledgment

Most of our law governing real property and its conveyancing comes to us from England, and that is the case with respect to acknowledgments as well. Except for conveyances by married women, acknowledgments were not required at common law.[2] They came into use, we are informed, after the enactment of the Statute of Enrolments in 1536 (27 Henry

---

2.   At common law, a married woman was incompetent to convey real property by deed without the concurrence and joinder of her husband. Her concurrence, however, was required in a deed executed by her husband, in order to release her right of dower. In either case, presumably for her protection, the law required that she make a separate acknowledgment, outside the presence of her husband, to assure the officer taking the acknowledgment that she executed the deed freely and voluntarily, without coercion from her husband. *See* 2 Tiffany, *Real Property*, § 514.

VIII c.16). Under that Act, the conveyance of an estate of inheritance or freehold by bargain and sale was ineffective unless the instrument of conveyance was in writing, indented, sealed, and enrolled with the King's Court at Westminster or before the Custos Rotulorum and two justices of the peace in the county where the land was located. Although the statute did not, of itself, require that the instrument be acknowledged, it appears that, when presented with a deed for enrolment, the judicial officials began to require evidence that the deed had, in fact, been executed by the grantor, and the practice thus arose of the grantor acknowledging the deed before those officials in order to provide that evidence. *See* 1A C.J.S. *Acknowledgments*, § 3. *See also Pidge v. Tyler*, 4 Mass. 541 (1808).

The Statute of Enrolments is not among the statutes listed in *Alexander's British Statutes* as having been incorporated into Maryland law pursuant to Article 5 of the Maryland Declaration of Rights.[3] Nor does it appear that an acknowledgment was ever statutorily required in England. In listing the requisites of a conveyance of real property, Blackstone makes no mention of an acknowledgment. II W. Blackstone, *Commentaries on the Law of England,* Ch. XX, 295–308 (Lewis ed.1922). Nonetheless, Maryland and other colonies enacted their own statutes requiring that deeds contain them. In 1766, the Lord Proprietary, with the advice and consent of the Provincial Assembly, enacted a law providing that no estate of inheritance or freehold or estate for above seven years was effective unless the deed was (1) acknowledged in the Provincial Court, in the county court, or before two justices of the peace, and (2) enrolled in the records of the court. Act of 1766, ch. 14. If the grantor was unable to appear before the Provincial Court or the county court where

---

**3.** Article 5 provides, in relevant part, that the inhabitants of Maryland are entitled to the common law of England and the benefit of "such of the English statutes as existed on the Fourth day of July, seventeen hundred and seventy-six; and which, by experience, have been found applicable to their local and other circumstances; and which have been used and practiced by the Courts of Law or Equity...."

the land was located, the acknowledgment could be made in the county court where the grantor resided, but in that event, the clerk had to certify that it was either made in open court or before two duly commissioned and sworn justices of the peace. If the grantor was not a resident of Maryland, the deed could be acknowledged "by letter of attorney, well and sufficiently proved" before the court or the justices of the peace.

Although the formality required in the early statutes has abated, as any notary public can now take an acknowledgment wherever the grantor may be, the fundamental purpose seems to be the same, of preventing fraud by providing some evidence of identity and volition—that the person stated in the deed as the grantor has, in fact, signed the deed and understands that what he or she has signed is a deed conveying property. That purpose is evident not only from § 5 of art. 18 but from the statutory forms themselves. As noted, the form declared acceptable in Real Prop. art., § 4–204 recites only that the grantor personally appeared and acknowledged the deed to be his or her act. The forms provided for in art. 18, § 7 are to the same effect—that the grantor personally appeared and acknowledged that he or she executed the deed for the purposes contained therein.

### D. What Is Required?

The cases involving the adequacy of acknowledgments fall into two broad categories—those involving the *sufficiency* of the notary's certificate, *i.e.*, whether facially it complies with the requirements of the applicable statute, and those involving the *accuracy* of the certificate, *i.e.*, whether the fact or event attested to actually occurred.

The cases in the first category are more numerous and involve such things as a blank where the name of the grantor should be (*Thomas v. Davis*, 241 Ala.271, 2 So.2d 616 (1941)), a failure to state the expiration date of the notary's commission (*Kelley v. Carter*, 216 Ark.491, 226 S.W.2d 53 (1950)), equivocation as to the notary's knowledge of grantor's identity (*Lindley v. Lindley*, 92 Tex.446, 49 S.W.573 (1899), *Kenley v.*

*Robb*, 245 S.W. 68 (Tex. Comm'n App.1922)), and the failure to state clearly that the grantor personally appeared. *Powers v. Hatter*, 152 Ala. 636, 44 So. 859 (1907). *See generally* Annotation, *Sufficiency of Certificate of Acknowledgment*, 25 A.L.R.2d 1124 (1952) and Annotation, *Sufficiency of Certificate of Acknowledgment*, 29 A.L.R. 919 (1924). We are not concerned here with deficiencies of that kind. Mr. Clofine's certificates are facially sufficient.

Most of the cases in the second category deal with situations in which the person whom the notary certified as having appeared did not, in fact, appear, or allegedly did not appear. They have arisen in at least two different contexts—a suit for damages against the notary for falsely certifying that the grantor appeared, and an action to invalidate the conveyance or instrument. The cases present a variety of factual situations, from taking an actual acknowledgment from an imposter (*Barnard v. Schuler*, 100 Minn. 289, 110 N.W. 966 (1907); *Hatton v. Holmes*, 97 Cal. 208, 31 P. 1131 (1893); *Anderson v. Aronsohn*, 63 Cal.App. 737, 219 P. 1017 (1923); *Lowe v. Wright*, 40 Tenn.App. 525, 292 S.W.2d 413 (1956); *Meyers v. Meyers*, 81 Wash.2d 533, 503 P.2d 59 (1972)), to taking an acknowledgment over the telephone (*Oswald v. Newbanks*, 336 Ill.490, 168 N.E.340 (1929)), to a grantor's signing the instrument in another room, not in the presence of the notary (*Christensen v. Arant*, 218 Neb.625, 358 N.W.2d 200 (1984)). These cases do establish an affirmative duty on the part of the notary (1) to require the actual presence of the grantor, and (2) to assure himself or herself that the person appearing and purporting to be the grantor is who he or she claims to be. Section 5 of article 18 now establishes that as a statutory duty. As with the first category, we are not concerned here with this kind of deficiency. Ethel has never contended that the power of attorney was not signed by Bernard in Mr. Clofine's presence or that the deed was not signed by Glenda in his presence. That part of the certificate attesting that Bernard or Glenda personally appeared before Mr. Clofine, in other words, is unchallenged.

■ The issue, then, is whether a certificate that the person appearing "acknowledged the foregoing deed to be his [or her] act," as prescribed in § 4–204 of the Real Property article, or that he or she "acknowledged that [he or she] executed the same for the purposes contained therein," as prescribed in § 7 of article 18, can rest on the notary's observations and general impressions or whether it requires some sort of affirmative declaration by the grantor. There are only a few cases on this point.

In *McQuatt v. McQuatt,* 320 Mass. 410, 69 N.E.2d 806 (1946), the children of a deceased grantor sued to set aside a deed through which their father had conveyed certain real estate to his then-wife, the children's stepmother. The initial claim was that the grantor was of unsound mind and that the deed was procured by undue influence. The deed was executed in the hospital about eight hours before the grantor died. The attorney who prepared the deed had earlier discussed it with the grantor in order to assure himself that the grantor was competent, but the attorney was not present when the deed was signed. The wife presented the deed to her husband and, in the presence of the notary, asked him if he knew what he was about to do. He said that he did, that he was turning his property over to his wife, and he then executed the deed with the assistance of the notary. Notwithstanding this evidence and some uncertainty as to whether the issue had even been raised in the trial court,[4] the Court found the deed void for want of a proper acknowledgment, apparently on the ground that the grantor made no verbal declaration *after signing the deed.* At 810, the Court stated:

---

**4.** The trial court dismissed the children's complaint after finding that the grantor was of sound mind and that there was no undue influence, findings affirmed by the appellate court. 69 N.E.2d at 808. That court introduced its discussion on the question of the acknowledgment thusly: "During the hearings before the master, evidence bearing on the issue of undue influence was properly introduced to show the circumstances attending the execution of the deed. This evidence *now* gives rise to the question whether this deed was duly acknowledged." *Id.* (emphasis added).

"An acknowledgment is the formal statement of the grantor to the official authorized to take the acknowledgment that the execution of the instrument was his free act and deed. No particular words are necessary as long as they amount to an admission that he has voluntarily and freely executed the instrument. [Citations omitted].[5] In the instant case, there is no finding that McQuatt, *after he signed the deed*, ever said a word to the one who made out the certificate of acknowledgment. On the other hand, there is an express finding that he did not say anything indicating that he acknowledged the instrument as his free act and deed." (Emphasis added).

So far as we can tell, only Massachusetts and Texas have imposed such a requirement, and the Texas case is somewhat unusual. In· *Punchard v. Masterson*, 100 Tex. 479, 101 S.W. 204 (1907), the sufficiency of a notary's certificate on a deed was challenged. Under an 1841 statute, deeds were entitled to be recorded "upon the acknowledgment of the party or parties before the register, or chief justice of the county." Nothing was said in the statute about the form or method of the acknowledgment. An 1846 statute required of an acknowledgment that the grantor appear and affirmatively state that he had executed the deed for the consideration and purposes stated therein. The deed in question was executed in 1841; the acknowledgment stated only that the grantor had appeared and signed the instrument in the notary's presence after reading and examining it. The court, in effect, read into the 1841 statute the specific requirement of a verbal declaration set forth in the 1846 law. The court never considered

---

5.   Some of the cases cited by the court do contain the general language defining an acknowledgment as a formal statement by the grantor that the execution of the deed was his free act. None of them concerned the question of whether the grantor was required to verbalize an acknowledgment, however. One dealt with whether there was sufficient knowledge of the grantor's identity; another concerned whether an acknowledgment taken on a Sunday was valid; in two others, the grantor or other necessary party did not appear at all before the notary; one concerned a statute that required the notary to explain the deed to the grantor.

whether any such declaration was made by the grantor but invalidated the deed because the certificate itself was insufficient.

In *Picetti v. Orcio*, 57 Nev. 52, 58 P.2d 1046 (1936), *reh'g*, 57 Nev. 52, 67 P.2d 315 (1937), a mortgage was purportedly signed by a husband and wife, although the wife later insisted that she had not signed the mortgage. She also claimed that the notary who certified her signature never actually took her acknowledgment. The notary testified that the husband signed the mortgage and note in his office but, when told that his wife also needed to sign, stated that the wife was unable to come in to sign them. The notary said that he then took the mortgage and note to the wife's home, exhibited them to her and told her that they needed her signature, that she took the documents into the house and brought them back with her signature attached, saying that she knew all about them, and that he thereafter certified her signature.

Reversing a judgment that the mortgage was invalid, the Nevada Supreme Court noted that, based on the notary's testimony, the wife, "strictly speaking," did not acknowledge that she had signed the mortgage. The fact that she handed him the document with her signature on it, however, and said "she knew all about it" were enough to bind her. 58 P.2d at 1051. That aspect of the decision was confirmed in the subsequent opinion issued upon reconsideration. 67 P.2d at 315. In effect, the Court held that conduct could suffice to constitute an acknowledgment.

That view was adopted, in an even clearer fashion, in *Waitt Bros. Land, Inc. v. Montange*, 257 N.W.2d 516 (Iowa 1977). At issue there was a contract for the sale of a farm. The sellers were an elderly couple. When the contract was submitted, the wife signed her name and, in her husband's presence, with his consent, and consistent with past practice, signed that of her husband. Several days later, a notary took the contract to the sellers' home, informed them that she was there to notarize their signatures, and showed them the contract. Neither of the sellers disclaimed the signatures or

objected to her notarizing them, which she did. There was no evidence of a lack of mental capacity or undue influence.

The sellers refused to implement the contract and defended a suit for specific performance on the ground that the husband had not signed the contract. The buyer argued that the husband had acknowledged the contract before the notary, to which the sellers responded that there was no acknowledgment because the husband had made no statement formally acknowledging his wife's signature on his behalf. In holding that there had been a sufficient acknowledgment, and therefore a valid contract, the Court cited and discussed *McQuatt* but decided to follow *Picetti* instead. At 520, the Court stated:

> "As indicated above, *McQuatt* suggests that the person making the acknowledgment must make a declaration in order to have a valid acknowledgment, while *Picetti* leaves open the possibility that conduct by the party before an officer can lead to a valid acknowledgment of the instrument.
>
> The position of defendants goes against the principles giving great weight to notarial certificates and the principle that a party contending an instrument is invalid must prove by clear and convincing evidence that contention is correct. Under the definition of an acknowledgment, according to Am.Jur.2d ... all that is required for a valid one is that the person make an admission that he has executed the instrument. To say that he can only admit that by making a verbal declaration to that effect and cannot demonstrate the fact by his conduct before the notary is to dignify form over substance. An admission by conduct (in this case by silence) and his other actions before the notary, is not a new principle and has been applied in the evidence field repeatedly. [Citation omitted]. We therefore adopt the *Picetti* view and carry it to its logical conclusion by finding and holding that conduct before a notary can constitute an admission which is requisite for due execution and proper acknowledgment of an instrument."

That view has been adopted in North Carolina as well. In *Lawson v. Lawson,* 321 N.C. 274, 362 S.E.2d 269 (1987), the issue was the validity of a separation agreement, which, under North Carolina law, was required to be signed and acknowledged. The parties appeared before a notary, whom they knew to be a notary, and signed the agreement in his presence. The notary did not inquire whether the signatures were voluntary, and that omission formed one of the grounds of attack on the agreement by the husband. The Court rejected the argument that there had been no acknowledgment. 362 S.E.2d at 272, it held:

"Defendant, in signing the separation agreement in the presence of the notary, performed acts sufficient to qualify as an acknowledgment under the statute. Since the signing was in the presence of the notary, it was unnecessary for defendant to state to the notary the fact of the execution of the instrument as his voluntary act."

Nebraska has also articulated that line of reasoning, although, under the facts of the two cases, the instruments at issue were held not to be properly acknowledged. In *Trowbridge v. Bisson,* 153 Neb. 389, 44 N.W.2d 810 (1950), the question was whether a real estate contract had been validly acknowledged. The sellers signed the contract in the presence of the real estate agent, who happened to be a notary, but they were unaware that he was a notary or that he was there to take an acknowledgment. The notary did not attach his certificate until some time later, after he had left the sellers' home. On those facts, the Court held that there had been no acknowledgment. It did, however, announce and apply the following rule:

"[I]t is generally the rule that if the party executing such an instrument knows that he is before an officer having authority to take acknowledgments, understands that such officer is present for the purpose of taking his acknowledgment, intends to then do whatever is necessary to make the instrument effective, and the acknowledging officer's official certificate is attached thereto, then such acknowledgment,

in the absence of fraud, will be conclusive in favor of those who in good faith rely upon it."

*Id.*, 44 N.W.2d at 812. *See also Christensen v. Arant, supra,* 358 N.W.2d 200.

In *Wayne Bldg. & Loan Co. v. Hoover,* 12 Ohio St.2d 62, 231 N.E.2d 873 (1967), a husband and wife signed a mortgage in the presence of the notary. No words were spoken by the notary or by the mortgagors; "they simply were asked to sign the loan contract and mortgage at the places indicated, and ... they did so sign their names in the presence of [the notary]...." *Id.*, 231 N.E.2d at 875. The Ohio statute required, for a valid mortgage, that it be signed by the mortgagor and that "such signing must be acknowledged by the [mortgagor] ... in the presence of two witnesses...." *Id.*

Noting that the statute required only an acknowledgment as to the "signing," the Court held that "where a witness has seen the signing, there has necessarily been an 'acknowledgment' of such 'signing' by the signer in his presence." *Id.* at 876.

■ Some of these cases, in terms of both pronouncements and outcome, are controlled by the specific language of a governing statute. If a statute requires a verbal declaration for a valid acknowledgment, the absence of such a declaration may well be fatal. Where, as in Maryland, there is no such statutory mandate, however, we think that the Massachusetts approach is unnecessarily rigid and formalistic. We follow instead the lead of the Iowa Court in *Waitt Bros. Land, Inc., supra,* 257 N.W.2d 516, and hold that an acknowledgment for purposes of §§ 4–101 and 4–204 of the Real Property article and §§ 5 and 7 of art. 18 does not require an oral declaration but may arise from circumstances and conduct. Specifically, we hold that, although a clear oral expression is preferable because it provides direct evidence of the signatory's knowledge and intent, when a signatory (1) appears personally before a notary for the purpose of having the notary witness and attest to his or her signature, (2) the signatory appears to

be alert and is under no apparent duress or undue emotional or intoxicating influence, (3) it is clear from the overall circumstances that the signatory understands the nature of the instrument he or she is about to sign, and (4) he or she signs the instrument in the presence of the notary with the apparent intent of making the instrument effective, the signatory is effectively acknowledging to the notary that the instrument is being signed voluntarily and for the purpose contained therein.

We reach this conclusion largely for the reasons stated by the Iowa, Nebraska, North Carolina, and Ohio Courts. It is consistent with what we understand to be common practice; it is consistent with the view, generally accepted in the law, that intent may be established circumstantially and by conduct; and it gives appropriate credence to notary's certificates that are regular and sufficient on their face.

Requiring some sort of oral declaration would, at best, be of only marginal assistance in preventing fraud. An imposter willing to forge someone's signature to a deed would not likely be deterred by having to make a brief, innocuous statement before a notary public; nor would a signatory actually subject to real duress or undue influence likely balk at making such a statement. If such fraud, duress, or undue influence can be proven, the instrument would be set aside for that reason; the lack of an oral declaration is unnecessary for that purpose. What such a requirement *might* do, however, is encourage lawsuits to upset instruments simply because of noncompliance with that requirement, even when the transaction was otherwise perfectly valid, and thus put at substantial risk the trust and confidence necessarily reposed in the land records.

For these reasons, we hold that the Court of Special Appeals erred in affirming the summary judgment entered on Counts I and II of Ethel's complaint. The case will be remanded for further proceedings on all counts of Ethel's complaint and on Glenda's counterclaim.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AS TO COUNTS I AND II AND OTHER-

WISE AFFIRMED. CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH INSTRUCTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AS TO COUNTS I THROUGH V OF ETHEL'S COMPLAINT AND TO REMAND THE CASE TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION ON ALL COUNTS OF ETHEL'S COMPLAINT AND ON GLENDA'S COUNTERCLAIM. RESPONDENT TO PAY THE COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS.